1  RICHARD J. NELSON (State Bar No. 141658)
   E-Mail:      *rnelson@sideman.com*
2  LYNDSEY C. HEATON (State Bar No. 262883)
   E-Mail:      *lheaton@sideman.com*
3  MICHAEL H. HEWITT (State Bar No. 309691)
   E-Mail:      *mhewitt@sideman.com*
4  SIDEMAN & BANCROFT LLP
5  One Embarcadero Center, Twenty-Second Floor
   San Francisco, California 94111-3711
6  Telephone:    (415) 392-1960
7  Facsimile:    (415) 392-0827

8  Attorneys for Cisco Systems, Inc. and Cisco Technology, Inc.

9

10              **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12  CISCO SYSTEMS, INC., a California          Case No.
    corporation, and CISCO TECHNOLOGY,
13  INC., a California corporation,            **COMPLAINT FOR DAMAGES AND**
                                               **INJUNCTIVE RELIEF FOR:**
14
                Plaintiffs,                    **1. TRADEMARK INFRINGEMENT, 15**
15                                             **U.S.C. § 1114;**
          v.                                   **2. TRADEMARK COUNTERFEITING, 15**
16                                             **U.S.C. § 1114;**
17  LINK US LLC, a North Carolina corporation, **3. FEDERAL UNFAIR COMPETITION, 15**
    BASEM TOMA, an individual,                 **U.S.C. § 1125;**
18                                             **4. DIGITAL MILLENNIUM COPYRIGHT**
                Defendants.                    **ACT, 17 U.S.C. § 1201, et seq.;**
19                                             **5. CALIFORNIA FALSE ADVERTISING,**
                                               **CAL. BUS. & PROF. CODE § 17500 et seq.;**
20                                             **6. UNJUST ENRICHMENT; and,**
21                                             **7. CALIFORNIA UNFAIR BUSINESS**
                                               **PRACTICES, CAL. BUS. & PROF. CODE**
22                                             **§ 17200 et seq.**
23
24                                             **DEMAND FOR JURY TRIAL**
25

26        Plaintiffs Cisco Systems, Inc. ("CSI") and Cisco Technology, Inc. ("CTI") (together,

27  "Cisco" or "Plaintiffs"), hereby complain and allege against Defendants Link US LLC ("LINK" or

28  "LINK US"); and Basem Toma ("TOMA") (together, "Defendants') as follows:

*(Left margin, vertical text:)* SIDEMAN & BANCROFT LLP — LAW OFFICES — ONE EMBARCADERO CENTER, 22ND FLOOR — SAN FRANCISCO, CALIFORNIA 94111-3711

## I.   INTRODUCTION

1.      This case seeks to stop the mass infringement and counterfeiting, and related unfair competition, arising from Defendants' importation and sale of counterfeit Cisco products.  The deliberate and unlawful scheme uncovered by Cisco demonstrates that Defendants have imported large quantities of computer networking equipment bearing counterfeit Cisco trademarks and sold or offered to sell these counterfeit products to consumers.  Cisco's customers rely on Cisco products to run complex, critical and highly secured networks.   But counterfeit Cisco products can cause privacy and security vulnerabilities, data loss, network downtime and substantial business interruption.  Cisco brings this Action to protect Cisco customers from receiving inferior counterfeit products, to put a stop to Defendants' unlawful and infringing conduct, to enjoin further unlawful and infringing conduct, and to recover full damages for the significant harm they have caused.

## II.   THE PARTIES

2.      Plaintiff Cisco Systems, Inc., is, and at all times mentioned herein was, a California corporation, with its principal place of business at 170 W. Tasman Drive, San Jose, California 95134.  Plaintiff Cisco Technology, Inc., is, and at all times mentioned herein was, a California corporation with its principal place of business at 170 W. Tasman Drive, San Jose, California 95134.  CTI owns the trademarks used by CSI in marketing Cisco-branded products.

3.      Upon information and belief, Defendant LINK is, and at all relevant times was, a North Carolina corporation, located at 280 Premier Drive, Suite 111, Holly Springs, North Carolina, 27540-6291.

4.      Upon information and belief, Defendant TOMA is, and at all relevant times was, an individual residing in North Carolina who is the President of, and is intimately involved in, operating LINK.

5.      At all times relevant to this action, each defendant was the agent, servant, employee, partner, joint venturer, representative, subsidiary, parent, affiliate, alter ego, or co-conspirator of the other defendants and was acting within the scope of that agency, service, employment, partnership, joint venture, representation, affiliation, or conspiracy, and each is

Case No.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  legally responsible for the acts and omissions of the others.

2  ## III.  JURISDICTION AND VENUE

3  6.      This is an Action for violations of the Trademark Act of 1946, 15 U.S.C. §§ 1051

4  et seq. (the "Lanham Act"),  the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201,

5  et seq, and related causes of action.  This Court has original subject matter jurisdiction over this

6  Action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1121, the DMCA, 17 U.S.C. §

7  1203, as well as under 28 U.S.C. §§ 1331 and 1338(a) and (b).

8  7.      This Court has supplemental subject matter jurisdiction over the pendent state law

9  claims under 28 U.S.C. § 1367, because these claims are so related to Cisco's claims under federal

10  law that they form part of the same case or controversy and derive from a common nucleus of

11  operative facts.

12  8.      This Court has personal jurisdiction over Defendants, who have engaged in

13  business activities in this district, misled consumers in this district, directed business activities at

14  this district, and committed tortious acts with knowledge that the effects of their acts would be felt

15  by Cisco in this district.

16  9.      Cisco is informed and believes, and thereon alleges, that the Defendants are citizens

17  and residents of the State of North Carolina, but do business in the State of California and/or

18  participated in or undertook obligations or availed themselves of rights arising out of the subject

19  events and happenings herein referred to, engaged in actions or omissions, either intentional or

20  negligent, regarding the subject events and happenings herein referred to, and/or benefitted from

21  unjustly from the efforts, work and goods of Cisco.

22  10.     Venue is proper in this district, pursuant to 28 U.S.C. § 1391, because a substantial

23  part of the events or omissions giving rise to Cisco's claims occurred in this judicial district, and a

24  substantial part of the property that is the subject of the action is situated in this district.

25  ## IV.  INTRA-DISTRICT ASSIGNMENT

26  11.     In accordance with Civ. L.R. 3-2(c), this action is properly assigned on a District-

27  wide basis because it relates to Intellectual Property Rights.

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

## V.    FACTUAL ALLEGATIONS

### A.    Cisco's Business And History

12.    Cisco was founded in 1984 and is the worldwide leader in developing, implementing, and providing the technologies behind networking, communications, and information technology products and services.  Cisco develops and provides a broad range of networking products and services that enable seamless communication among individuals, businesses, public institutions, government agencies, and service providers.  Specifically, the thousands of engineers who work at Cisco develop and provide networking and communications hardware, software, and services that utilize cutting-edge technologies to transport data, voice, and video within buildings, across cities and campuses, and around the world.

13.    Since its founding, Cisco has pioneered many of the important technologies that created and enabled global interconnectivity.  During the past three decades, Cisco has invested billions of dollars, and the time and dedication of thousands of its engineers, in the research, development, and sale of industry leading networking and communications products and services.

14.    Cisco has also built up tremendous goodwill and brand reputation among consumers, including corporate and government consumers, through significant investment in advertising, promoting, and delivering products, software, and services of the highest quality under Cisco's CISCO trademark and trade name and the family of CISCO-related trademarks (the "CISCO Marks").  Cisco has used the family of CISCO Marks to identify goods and services as being genuine and authorized, and therefore, the CISCO Marks are well-recognized signifiers of Cisco's best-in-class products, software, and services.

### B.    Cisco's Trademarks

15.    CTI owns all rights, title, and interest in the CISCO Marks, which are included on the Principal Register of the U.S. Patent and Trademark Office.  The CISCO Marks are well-known.  They are used in connection with Cisco's networking hardware and software products and services.  They include, but are not limited to, the following marks that are used in interstate commerce:

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Case No.

| Mark | Registration Number | Registration Date |
|------|---------------------|-------------------|
| CISCO | 1,542,339 | June 6, 1989 |
| CISCO SYSTEMS | 1,996,957 | August 27, 1996 |
| CISCO | 2,498,746 | October 16, 2001 |
| ılıılıı CISCO | 3,759,451 | March 9, 2010 |
| CISCO | 3,978,294 | June 14, 2011 |
| ılıılıı CISCO | 4,263,591 | December 25, 2012 |

16.    The CISCO Marks are distinctive, having no meaning outside of their use by Cisco in its course of business operations and in its advertising to distinguish its products and services. Cisco uses the CISCO Marks to advertise through a wide variety of media including television, radio, newspapers, magazines, billboards, direct mail, and web sites.

17.    Cisco has attained one of the highest levels of brand recognition among consumers due to its extensive advertising and promotional efforts and its continuous use of its core CISCO Marks for the past three decades.  As a result of Cisco's longstanding and widespread use and promotion of the CISCO Marks, Cisco customers around the globe have come to rely upon the CISCO Marks to identify Cisco's high-quality hardware, software, and services.

18.    Cisco's customers associate Cisco's famous and well-known CISCO Marks exclusively with Cisco and Cisco's products and services.  When consumers encounter these marks and decide to purchase goods and services identified by these marks, they expect to receive genuine Cisco products that have been produced by Cisco and meet Cisco's rigorous quality control standards.

C.    **Cisco's Copyrights and Protection of Access to Software**

19.    Cisco has also expended significant resources and effort to research and develop world-class software products that enable, enhance, and interoperate with its high-quality hardware.  CTI has caused numerous Cisco software copyrights to be registered with the U.S.

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   Copyright Office in connection with a range of telecommunications, computer hardware and

2   software products and services, and CTI owns all rights, title, and interest in these CISCO federal

3   copyrights, including but not limited to:

| Title | Copyright Number | Date |
|---|---|---|
| Cisco IOS 12.0 | TXu001036064 | 2002 |
| Cisco IOS 12.1 | TXu001036066 | 2002 |
| Cisco IOS 12.2 | TXu001036065 | 2002 |
| Cisco IOS 12.3 | TXu001188975 | 2004 |
| Cisco IOS 12.4 | TXu001259162 | 2005 |
| Cisco IOS 15.0 | TX0007938524 | 2009 |
| Cisco IOS 15.1 | TX0007938525 | 2010 |
| Cisco IOS 15.2 | TX0007937159 | 2011 |
| Cisco IOS 15.4 | TX0007938341 | 2013 |
| Cisco IOS XE 2.1 | TX0007937240 | 2008 |
| Cisco IOS XE 3.5 | TX0007937234 | 2011 |

The above software copyright registrations includes software for the CISCO Catalyst switches

referred to in the Complaint below.

20.     CISCO has instituted certain technological measures to control access to its

copyright-protected software, including the software identified above.  One of those technological

measures is the use of authentication checks that control access to the Cisco copyright protected

software on genuine Cisco products.

**D.     Counterfeit "Cisco" Products**

21.     Counterfeit products that bear markings similar or identical to the CISCO Marks

provide customers with a false assurance that the products they have purchased (1) are reliable and

conform with Cisco's high standards, (2) come with applicable warranties, (3) can be placed under

a Cisco service support contract (i.e., SMARTnet) without payment of extra relicensing or

inspection fees, and (4) have been produced in accordance with Cisco's quality assurance

standards.

22.     In addition to harming Cisco's customers, the sale of counterfeit Cisco products

also harms Cisco in many ways.  Among these, counterfeit Cisco products which fail or degrade

create the false impression that Cisco products are unreliable, thereby improperly tarnishing

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Cisco's reputation and causing Cisco to suffer lost sales and future business opportunities.  When customers purchase Cisco-branded parts that are counterfeit and unreliable, their image of Cisco is diminished and Cisco's opportunity to sell genuine, high-quality products to those customers may be lost forever.  As a result, Cisco suffers substantial and irreparable harm to its brand, image, business, and goodwill with the public.  Cisco also suffers lost sales when customers purchase counterfeit products instead of genuine Cisco products.

### E.   Impact on Health, Safety, and National Security Caused By Counterfeit Cisco Products

23.    Cisco products are part of the backbone of the United States information network.  Many of Cisco's products are purchased by U.S. governmental entities, the military, hospitals, and by other industries, and used in important and life-essential applications.  Critical governmental and other infrastructure is built on, and relies upon, Cisco products to maintain the security of data storage and transfer.

24.    The importance of critical functions being able to rely upon the quality of Cisco products cannot be overstated.  Cisco firewalls, for example, ensure the integrity of government, medical, and business data and communications.  Many critical government functions rely upon the performance of high-quality Cisco products, as compared to the dangers posed by lower quality counterfeits.  For example, in a criminal trial involving counterfeit Cisco products sold to the U.S. Marines, a Marine (Staff Sargent Lee Chieffalo) testified that he specifically demanded genuine Cisco products when he ordered them, because if the networks that the "Cisco" products were in failed due to substandard counterfeit products, "Marines could die."

### F.   Cisco's Sales and Distribution Channels

25.    Cisco is one of the United States' largest and most innovative companies.  The volume of Cisco's yearly sales revenue of hardware, software, and related services is approximately $50 billion dollars world-wide.  In order to support this global market, for the great majority of its sales, Cisco relies upon a system of independent distributors and resellers located throughout the world.  This system is commonly used in the IT hardware and networking industry.  These independent distributors and resellers, referred to as "Authorized Channel Partners" or

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   "Authorized Resellers," typically represent several other equipment manufacturers, in addition to

2   Cisco.  Among other things, Cisco's distribution system allows it to maintain expertise and a local

3   presence in regions of the world where there would not otherwise be sufficient business to support

4   it.

5          26.     Authorized Resellers are required to enter into contractual relationships with Cisco

6   that allow them to purchase Cisco products and services at a partner discount from Cisco's

7   authorized distributors.  The most common contractual relationship is called an Indirect Channel

8   Partnership Agreement ("ICPA").  This agreement requires Authorized Resellers to purchase

9   Cisco products and services only from Cisco or authorized distributors and to sell those products

10  and services only to end customers for their internal use ("End Users").

11         **G.     Defendants' Wrongful Conduct**

12         27.     Defendant LINK was formerly an authorized indirect channel partner with Cisco.

13  In May 2014, Cisco terminated its ICPA with LINK after uncovering numerous violations of the

14  ICPA, including reselling Cisco products to other resellers.

15         28.     Subsequently, and without the consent of Cisco, Defendants imported, sold, offered

16  for sale, distributed, transported, or assisted in or caused the importation, sale, offer for sale,

17  distribution, or transportation in interstate commerce, of products bearing unauthorized

18  reproductions, copies, counterfeits and colorable imitations of the CISCO Marks (the "Infringing

19  Products").

20         29.     Cisco further asserts, upon information and belief, that Defendants continue to

21  import, sell, offer for sale, distribute, transport, or assist in or cause the importation, sale, offer for

22  sale, distribution, or transportation in interstate commerce of products bearing unauthorized

23  reproductions, copies, counterfeits and colorable imitations of the Infringing Products.

24         30.     On information and belief, TOMA is actively involved in the day-to-day

25  management and operations of LINK.

26         31.     On information and belief, TOMA controls LINK, LINK is the alter ego of TOMA,

27  and TOMA knowingly and intentionally used LINK to commit the unlawful actions alleged

28  herein.

32.     On information and belief, LINK purchases a large amount of its Infringing Products from a number of exporters located in China and Hong Kong.  On information and belief, LINK knows or should know that products purchased from each of these importers were not authentic Cisco products based on various indicators, including, but not limited to, prior seizures of products LINK had imported from these same importers, the low prices for which LINK purchased the imported products, LINK's exposure to, and experience with, genuine Cisco products, prices and distribution chain, and the geographic location from which LINK was purchasing and importing the Infringing Products.

### i.     Customs and Border Protection Seizures and Cease and Desist Activities

33.     Between August 2015 and June 2018, U.S. Customs and Border Protection ("CBP") seized products bearing counterfeit CISCO Marks being imported by LINK, and shipped to addresses associated with LINK, on thirteen (13) separate occasions.

34.     A list of the seizures is below:

| Seizure Notice # | Date of Import | Description |
|---|---|---|
| 2015-4196-102045-01 | August 18, 2015 | 63 Cisco GLC-GE-100FX |
| 2017-3195-000-273-01 | August 31, 2017 | 25 Transceivers |
| 2017-3195-000-274-01 | August 31, 2017 | 25 Transceivers |
| 2017-4197-104256-01 | September 22, 2017 | 19 Cisco Modules |
| 2018-4197-10005901 | October 6, 2017 | 49 Cisco GLC-T |
| 2018-4197-100380-01 | November 1, 2017 | 47 Cisco Transceivers |
| 2018-3195-000-114-01 | November 20, 2017 | 45 Cisco Transceivers SFP-10G-5R |
| 2018-3195-000-221-01 | March 3, 2018 | 2 Cisco Network Switches |
| 2018-4197-102199-01 | March 15, 2018 | 50 Cisco GLC-LH-SM Modules |
| 2018-4197-102899-01 | April 24, 2018 | 1 Cisco WS-C3560X-24T-S Switch |
| 2018-4197-102964-01 | April 25, 2018 | 1 Cisco ISR4331/F/K9 Switch |
| 2018-4197-000173-01 | May 26, 2018 | 6 Cisco C3KX-NM-10G Circuit Panels |
| 2018-4197-00035501 | June 29, 2018 | 25 Cisco Stacks |

35.     As stated on each of the seizure notices, all of the products seized by CBP were being imported by LINK.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

36.     On or about March 8, 2016, following receipt of the CBP notice of the August 18, 2015 seizure of "Cisco" products, counsel for Cisco sent a letter to LINK requesting that it "immediately cease and desist importing, marketing and/or distributing . . . counterfeit or infringing goods," and further requested LINK's cooperation in bringing the infringing activity to a halt, by, among other things, quarantining all "Cisco" product and preserving any evidence that might assist Cisco's investigation.

37.     On March 28, 2016, counsel for LINK US responded to Cisco's cease and desist letter, claiming that a former employee may have been responsible for the requested import, but that the employee no longer worked for LINK US.

38.     Over the next two years, Cisco received six further notifications from CBP regarding seizures of various shipments of counterfeit Cisco products that were destined for LINK.

39.     On February 15, 2018, Cisco sent a second cease and desist letter to counsel for LINK US.  Cisco did not receive any response to the letter.

40.     Less than a month after sending the second cease and desist letter, CBP notified Cisco of another seized shipment of counterfeit Cisco products imported by LINK.  Since sending the second cease and desist notice in February 2018, Cisco has received six additional notices from CBP regarding seized shipments of counterfeit Cisco products to LINK.

41.     Cisco asserts, on information and belief, that LINK purposefully uses various exporters, from different countries, and bearing different names, to increase the success of the counterfeit "Cisco" products not being inspected and seized by CBP.

42.     On information and belief, LINK has continued to import "Cisco" products from various shippers every month until the present.  It is believed, and on information and belief asserted, that LINK has continued and continues to purchase and sell counterfeit "Cisco" products.

43.     On information and belief, LINK has successfully imported Infringing Products that were not seized by CBP because CBP inspects only a small portion of all shipments coming into the United States.  Though LINK knows or should know that the Infringing Products are not authentic, based, in part, on Cisco's notification of the infringing conduct, LINK nevertheless continues to knowingly sell these products to customers in the United States, who are unaware that

Case No.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  they are purchasing counterfeit products.

2          ii.     **April 2018 Sale of Counterfeit Cisco Switch**

3      44.    On or about April 23, 2018, an investigator engaged by Cisco made a purchase

4  from LINK's online store (https://www.link-us-online.com/) of a Cisco WS-C29060X-48FPD-L

5  switch.  LINK advertised the switch as an authentic Cisco product at a steep discount from Cisco's

6  Global List Price:



17     45.    The switch (serial number FCW1949A2W3) was sent by LINK to the investigator

18  in Berkeley, California, within the Northern District of California.

19     46.    The switch was examined by Cisco engineers, who determined that it was

20  counterfeit.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

47.     The counterfeit switch also had an implanted component, whose function was to bypass Cisco's software authentication process, which runs during boot-up. Cisco's software authentication processes are technological measures that effectively control access to Cisco's copyright protected software. The component was connected to the Cisco product, using a substandard manufacturing method that is significantly inconsistent with Cisco's high manufacturing and quality control standards:



48.     By adding the component, whose function and purpose was to circumvent the access controls to Cisco's copyrighted software, Defendants manufactured, imported, offered to the public, provided, or otherwise trafficked in a technology, product, service, device, component or part thereof, that is primarily designed or produced for the purpose of circumventing Cisco's technological protection measures that effectively control access to its copyrighted software and to thereby allow third parties access to Cisco's Copyrighted Works without authorization.

49.     The packaging and labels further constitute false designation of origin, misrepresenting the product as being approved, endorsed, and authorized by Cisco, and also false and misleading representations/descriptions of fact as to the products itself. Such false and misleading designations are likely to cause confusion, mistake, and deception among members of the trade and general consuming public as to the origin, sponsorship, approval and quality of

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Case No.

1    Defendants' counterfeit and/or otherwise infringing products.

2        50.      Reselling materially-altered Cisco branded products with these non-genuine

3    components slapped on has undermined, and continues to undermine, Cisco's supply chain and

4    quality control processes and usurped Cisco's right to control the quality of products bearing the

5    Cisco Marks being sold to the public.

6              **iii.      April 2018 Sale of Counterfeit Cisco Software License**

7        51.      As part of the same controlled purchase, on April 23, 2018, the investigator

8    engaged by Cisco also purchased a Cisco L-C3850-48-S-E E-License.   LINK US advertised the

9    license as an authentic Cisco license at a steep discount from Cisco's Global List Price:



21        52.      The license (SO# 105406589) was sent by LINK US in PDF format via email to the

22    investigator in Berkeley, California, within the Northern District of California.  The license

23    authorization was printed on a certificate that contained the Cisco trademarked logo.

24        53.      The original license (Order Number 105406589) contained only a product

| Product Name | Product Description | Entitlement Qty |
|---|---|---|
| L-C3850-48-S-E | C3850-48 IP Base to IP Services Electronic RTU License | 1 |

description:

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

However, the license purchased from LINK US on April 23 possessed the same Order number, but had been altered to reflect additional features that were purportedly covered by the license which Cisco had not originally intended or included for this specific license number:

| Product Name | Product Description | Entitlement Qty |
|---|---|---|
| L-LIC-CT3850-UPG= Features | Upg license SKU for Cisco 3850 WirelessController (e-deliv) | 1 |
| L-C3850-48-S-E | C3850-48 IP Base to IP Services Electronic RTU License | 1 |

Product activation keys for C3850 series

54.     Based on the differences in the licenses, and by comparing the purchased license with Cisco's database, Cisco engineers determined that the license certificate was counterfeit.

### iv.     April 2018 Sale of Counterfeit Transceivers

55.     As part of the same controlled purchase, on April 23, 2018, the investigator engaged by Cisco also purchased the following eight (8) transceiver modules:

| Item | Description | Serial Number(s) |
|---|---|---|
| GLC-SX-MMD | Cisco 1000 Base-SX MMF SFP Gigabit Transceiver Modules | FNS19021588 FNS19021327 |
| GLC-LH-SMD | Cisco SFP (mini-GBIC) Transceiver Module | AVJ182332Y1 FNS17512XYZ |
| GLC-T | Cisco 1000 Base-T Copper RJ45 SFP Mini Transceiver Module | MTC19090E9T MTC19090E5A |
| SFP-10G-SR | Cisco SFP+ 10 Gigabit Transceiver Module | FNS19021H96 FNS19380JBD |

LINK US advertised each of the transceiver modules at a steep discount from Cisco's Global List Price:

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711






56.     The transceivers were sent by LINK US to the investigator in Berkeley, California, within the Northern District of California.

57.     The GLC-SX-MMD transceivers (SN Nos. FNS19021588 and FNS19021327) were examined by engineers at Cisco's request and determined to be counterfeit.

58.     The GLC-LH-SMD transceivers (SN Nos. AVJ182332Y1 and FNS17512XYZ) were examined by engineers at Cisco's request and determined to be counterfeit.

59.     The GLC-T transceivers (SN Nos. MTC19090E9T and MTC19090E5A) were examined by engineers at Cisco's request and determined to be counterfeit.

60.     The SFP-10G-SR transceivers (SN Nos. FNS19021H96 and FNS19380JBD) were examined by engineers at Cisco's request and determined to be counterfeit.

v.     **August 2018 Sale of Counterfeit Cisco Products**

61.     On or about August 20, 2018, an investigator engaged by Cisco contracted out to another investigative company which purchased several more products from LINK US's Amazon storefront, including:

Case No.
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

| Item | Description | Serial Number(s) |
|------|-------------|------------------|
| WS-C2960X-48TD-L | Catalyst 2960-x 48 GigE 2 x 10G SFP+ LAN Switch | FCW2115B2MT |
| C2960X-STACK | FlexStack-Plus Hot-Swappable Stacking Module | FOC21319A55 |

62.     LINK US advertised the switch and stack module as authentic Cisco products at a steep discount from Cisco's Global List Price:





63.     The WS-C2960X-48TD-L switch (SN FCW2115B2MT) and C2960X-STACK (SN

1    FOC21319A55)  were each examined by Cisco engineers, who determined that each product was

2    counterfeit.

3        64.     In addition, the switch, like the previous switch purchased on April 23, 2018, also

4    had an implanted component whose function was to bypass Cisco's software authentication

5    process and permitting access to Cisco's copyright protected software.  The component was

6    connected to the Cisco product using the same style of sub-par components and soldering as the

7    April 23, 2018 switch.  The engineers further determined that the switch appeared to have been

8    originally manufactured as an older and less valuable switch model WS-C2960X-24TS-LL.

9        65.     Cisco has been, and continues to be, harmed by Defendants' unlawful actions.

10                **FIRST CLAIM FOR RELIEF**

11             **Federal Trademark Infringement**

12                 **(15 U.S.C. § 1114)**

13                 **Against All Defendants**

14        66.     Cisco incorporates by reference each of the allegations in the preceding paragraphs

15    of this Complaint as though fully set forth here.

16        67.     The Cisco Marks are valid, protectable trademarks that have been registered as

17    marks on the principal register in the United States Patent and Trademark Office.  Cisco is the

18    owner and registrant of the Cisco Marks.

19        68.     As described in more detail above, Defendants have used and counterfeited the

20    Cisco Marks in connection with the marketing, promotion, and sale of their goods and services

21    without Cisco's consent, in a manner that is likely to cause, and has actually caused, confusion

22    and/or mistake, or that has deceived members of the consuming public and/or the trade.  Indeed,

23    Defendants counterfeiting and infringing activities are likely to cause and are actually causing

24    confusion, mistake, and deception among members of the trade and the general consuming public

25    as to the origin, sponsorship, and quality of Defendants' infringing products, counterfeit

26    packaging, inferior or no warranty, and other related commercial activities.  As of the filing of this

27    Complaint, Defendants are continuing to infringe the Cisco Marks unabated as alleged further

28    above.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Case No.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

69.     The Cisco Marks and the goodwill of the business associated with them are tremendously valuable in the United States and worldwide because they are distinctive and universally associated in the public perception with the highest quality network and communications technology products and services.

70.     Defendants have sold, offered to sell, distributed, and advertised—and continue to sell, offer to sell, manufacture, distribute, and advertise—infringing networking hardware products bearing Cisco Marks.

71.     The differences between Defendants' unauthorized products and genuine Cisco goods are material, as consumers would consider those differences, alleged further above, to be material to their purchasing decisions.

72.     Defendants' actions have caused, and are likely to continue to cause, confusion, mistake, and deception as to the origin and quality of Defendants' unauthorized products because they are intentionally calculated to mislead the general purchasing public into believing that Defendants' unauthorized and non-genuine products originated from, are associated with, or are otherwise authorized by Cisco.

73.     Upon information and belief, Defendants' infringing actions were committed fraudulently, willfully, and in bad faith, with knowledge of Cisco's exclusive rights to and goodwill in the Cisco Marks, or with willful blindness to the same, and with the intent to cause confusion, to cause mistake and/or to deceive.  Accordingly, Defendants' actions constitute willful trademark infringement and counterfeiting of the Cisco Marks in violation of 15 U.S.C. §§ 1114 and 1117.

74.     Defendants' unauthorized use of the Cisco Marks constitutes trademark infringement of the federally registered Cisco Marks and has caused substantial damage to Cisco and to the reputation and goodwill symbolized by the Cisco Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.  Defendants' unauthorized use of the Cisco Marks was conducted intentionally and with notice and full knowledge that the use was unauthorized by Cisco.

75.     Cisco has been, and continues to be, damaged by Defendants' infringement,

1  including by suffering irreparable harm through the diminution of trust and goodwill among Cisco

2  consumers and members of the general consuming public and the trade.  Cisco is entitled to an

3  injunction against Defendants, and an order of destruction of all infringing products, as well as all

4  monetary relief and other remedies available under the Lanham Act, including but not limited to

5  trebled damages and/or actual profits, reasonable attorney's fees, costs and prejudgment interest,

6  and/or statutory damages.

**SECOND CLAIM FOR RELIEF**

**Federal Trademark Counterfeiting**

**(15 U.S.C. § 1114 and § 1117)**

**Against All Defendants**

11  76.     Cisco incorporates by reference each of the allegations in the preceding paragraphs

12  of this Complaint as though fully set forth here.

13  77.     The Cisco Marks are valid, protectable trademarks that have been registered as

14  marks on the principal register in the United States Patent and Trademark Office.  Cisco is the

15  owner and registrant of the Cisco Marks.

16  78.     As described in more detail above, Defendants have used and counterfeited the

17  Cisco Marks in connection with the importation, marketing, promotion, and sale of their goods

18  and services without Cisco's consent, in a manner that is likely to cause, and has actually caused,

19  confusion and/or mistake, or that has deceived members of the consuming public and/or the trade.

20  Indeed, Defendants' counterfeiting and infringing activities are likely to cause and are actually

21  causing confusion, mistake, and deception among members of the trade and the general

22  consuming public as to the origin, sponsorship, and quality of Defendants' infringing products,

23  counterfeit packaging, inferior warranty, and other related commercial activities.  As of the filing

24  of this Complaint, Defendants are continuing to infringe the Cisco Marks unabated as alleged

25  further above.

26  79.     Defendants have on at least thirteen (13) separate occasions attempted to import

27  products bearing counterfeit Cisco Marks.  Defendants intended to sell these products in interstate

28  commerce and would have done so absent CBP's seizure of such products.  Such sales, if

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

completed, would have directly competed with authorized sales of authentic Cisco products. Defendants have further successfully imported Infringing Products that were not interdicted by CBP, as verified by Cisco's controlled purchases from entities located within the United States.

80.     Defendants have publicly advertised, sold, offered to sell, and distributed counterfeit Cisco products in interstate commerce in direct competition with Cisco and without authorization or consent to use the Cisco Marks but with full knowledge of Cisco's notorious prior rights in those marks.

81.     Defendants' counterfeit Cisco products reproduce, counterfeit, copy, and colorably imitate the Cisco Marks or display a spurious designation that is identical with, or substantially indistinguishable from, the Cisco Marks.  Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of the Cisco Marks to labels, prints, and packages intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of Defendants' counterfeit products, which is likely to cause confusion, to cause mistake, or to deceive.

82.     Defendants' unauthorized use of the Cisco Marks on or in connection with Defendants' counterfeit products was conducted intentionally and with notice and full knowledge that the use was unauthorized by Cisco.  Accordingly, Defendants' actions constitute willful trademark infringement and counterfeiting of the Cisco Marks in violation of 15 U.S.C. §§ 1114 and 1117.

83.     Cisco has been, and continues to be, damaged by Defendants' infringement, including by suffering irreparable harm through the diminution of trust and goodwill among Cisco consumers and members of the general consuming public and the trade.  Cisco is entitled to an injunction against Defendants, and an order of destruction of all infringing products, as well as all monetary relief and other remedies available under the Lanham Act, including but not limited to trebled damages and/or actual profits, reasonable attorney's fees, costs and prejudgment interest, and/or statutory damages.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Case No.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**THIRD CLAIM FOR RELIEF**

**Federal Unfair Competition**

**(15 U.S.C. § 1125)**

**Against All Defendants**

84.     Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

85.     Defendants' resale of infringing products that are designed to appear identical to genuine Cisco products and thereby employ the same nature, style, look, and color as genuine Cisco products.  Moreover, as alleged above, Defendants sell products that have affixed counterfeit or infringing versions or reproductions of the Cisco Marks to unauthorized products and/or to the packaging, wrapping, etc., in which the infringing products are packaged.  This unauthorized use of the Cisco Marks is likely to cause confusion, to deceive, and to mislead the consuming public into believing that there is some affiliation, connection, or association between Defendants and Cisco and is likely to cause confusion, mistake, or deception as to the origin, source, sponsorship, authorization, approval, or affiliation of Defendants' unauthorized products.

86.     Defendants' actions, including the unauthorized use of the Cisco Marks in commerce, constitute false designation of origin, false or misleading descriptions of fact, and false or misleading representations of fact, which have caused, and are likely to continue to cause, confusion, mistake, and deception, as to Defendants' association or affiliation with Cisco, or lack thereof, as well as to the origin, source, and sponsorship of Defendants' unauthorized products, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

87.     Defendants, in commercial advertising and promotion, misrepresent the nature, characteristics, qualities, or geographic origin of the Cisco products they sold by not disclosing that they are not covered by the manufacturer's warranty.  The false advertising concerned material information that was likely to influence a consumer's purchasing decision.

88.     Defendants further misrepresent, in commercial advertising and promotion, the nature, characteristics, qualities, or geographic origin of the Cisco products they sold by not disclosing certain components are non-authentic, or are intentionally designed to bypass authentic

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  Cisco copyright-protected software.  The false advertising concerned material information that

2  was likely to influence a consumer's purchasing decision.

3        89.     Defendants' unauthorized and misleading use of the Cisco Marks constitute willful

4  infringement of the Cisco Marks in violation of 15 U.S.C. § 1114(1)(b) and entitling Cisco to

5  treble damages and/or enhanced statutory damages under 15 U.S.C. §§ 1117(b) and (c).

6        90.     Defendants' actions described above, including its unauthorized and misleading use

7  of the Cisco Marks in commerce have caused, and unless enjoined, will continue to cause,

8  substantial and irreparable injury to Cisco and to the business and goodwill represented by the

9  Cisco Marks, thereby leaving Cisco without an adequate remedy at law.

10  **FOURTH CAUSE OF ACTION**

11  **Violations of the Digital Millennium Copyright Act**

12  **(17 U.S.C. § 1201, *et seq.*)**

13  **Against All Defendants**

14        91.     Cisco incorporates by reference each of the allegations in the preceding paragraphs

15  of this Complaint as though fully set forth here.

16        92.     As set forth in more detail above, Cisco employs technological protection measures

17  that effectively control access to Cisco's Copyrighted Works.

18        93.     As set forth in more detail above, Defendants' added components and related

19  software is used to circumvent a technological protection measure put in place by Cisco, because it

20  avoids, bypasses, removes, descrambles, decrypts, deactivates, and/or impairs a technological

21  protection measure without Cisco's authority for the purpose of gaining unauthorized access to

22  Cisco's copyrighted software.

23        94.     As set forth in more detail above, Defendants have manufactured, imported, offered

24  to the public, provided, or otherwise trafficked in a technology, product, service, device,

25  component, or part thereof, that is primarily designed or produced for the purpose of

26  circumventing Cisco's technological protection measures that effectively control access to its

27  copyrighted software and to thereby allow third parties to access Cisco's Copyrighted Works

28  without authorization.

95.    Defendants' circumvention devices have only limited commercially significant purpose or use other than to circumvent a technological protection measure that effectively controls access to copyrighted works, or are marketed by Defendants for use in circumventing a technological protection measure that effectively controls access to copyrighted works.

96.    Cisco is informed and believes, and thereon alleges, that Defendants have realized significant profit, and that Cisco has sustained significant damages, as a result of the above violations of the DMCA.

97.    Cisco is entitled to recover actual damages it has suffered and/or any profits gained by Defendants as a result of their violations of the DMCA  Cisco is also entitled to recover full statutory damages, enhanced damages, fees, costs, injunctive relief, and any other and further damages or relief to the fullest extent provided under the law.

## FIFTH CAUSE OF ACTION

### California Statutory Misleading and Deceptive Advertising,

### (Cal. Bus. & Prof. Code § 17500, *et seq.*)

### Against All Defendants

98.    Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

99.    Defendants LINK US and TOMA have made false and misleading statements about their relationship and/or association with Cisco.

100.    Defendants also misleadingly advertised its products as authentic Cisco, when they were in fact counterfeit.

101.    Defendants knew that these statements were false or misleading, or with reasonable care, should have known them to be false or misleading.

102.    Defendants' statements have misled, or are likely to mislead, a reasonable consumer into believing that Defendants were selling products as an authorized Cisco reseller, and that the "Cisco" products sold by Defendants are new, original, and eligible for Cisco warranty.

103.    The conduct alleged above constitutes false and misleading advertising, in violation of Section 17500, et seq. of California's Business and Professions Code.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

104.     Plaintiffs have suffered loss of money as a result of Defendants' misleading and false advertising.  Defendant has, and will continue to cause, irreparable injury to Plaintiffs, including injury to Plaintiffs' reputation and goodwill. Defendants' activities, unless restrained, will continue to cause further irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.

**SIXTH CLAIM FOR RELIEF**

**Unjust Enrichment**

**(Common Law)**

**Against All Defendants**

105.     Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

106.     Defendants unjustly received benefits at the expense of Cisco through their wrongful conduct, as alleged further above. Defendants continue to unjustly retain these benefits at the expense of Cisco.  The unjust receipt of the benefits obtained by Defendants lacks any adequate legal basis and thus cannot conscientiously be retained by Defendants.  Therefore, the circumstances of the receipt and retention of such benefits are such that, as between Cisco and Defendants, it is unjust for Defendants to retain any such benefits.

107.     Cisco is therefore entitled to full restitution of all amounts and/or other benefits in which Defendants have been unjustly enriched at Cisco's expense, in an amount to be proven at trial.

**SEVENTH CLAIM FOR RELIEF**

**California Unfair Competition**

**(Cal. Bus. & Prof. Code §§ 17200 _et seq._)**

**Against All Defendants**

108.     Cisco incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

109.     California Business and Professions Code §§ 17200 _et seq._ prohibits acts of unfair competition, which includes any unlawful business act or practice.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

110.    Defendants have knowingly, willfully, and unlawfully infringed the Cisco Marks, including through the sale of infringing Cisco networking hardware products in violation of the Lanham Act, 15 U.S.C. § 1114.

111.    As a direct, proximate, and foreseeable result of Defendants' sale of infringing Cisco networking hardware parts, Cisco has further been deprived of lost revenue and payments, and has therefore sustained injury in fact.

112.    Upon information and belief, due to Defendants' unlawful conduct, Defendants have caused and induced its customers to make invalid warranty claims to Cisco, thereby causing Cisco to send those customers replacement parts to which they were not entitled.

113.    Upon information and belief, as a direct, proximate, and foreseeable result of Defendants' conduct, as alleged above, Cisco has lost valuable product that was shipped to Defendants' customers pursuant to warranty claims, but to which Defendants' customers were not rightfully entitled, and incurred costs associated with processing the service requests and returns.

114.    Upon information and belief, and as alleged further above, Defendants' conduct induced authorized resellers to breach their contracts with Cisco, thereby harming fair competition.

115.    Defendants' practices were unlawful, and constitute unfair competition as defined by Cal. Bus. & Prof. C. §§ 17200 *et seq.*  Defendants' misconduct was unlawful because, as described herein, their misconduct constitutes violations of numerous state and federal statutes, including but not limited to Cal. Civ. Code § 1797.81, conversion, state false advertising laws such as Cal. Bus. Prof. Code § 17500, as well as the Lanham Act, 15 U.S.C. §§ 1114 and 1125, and the Federal Trade Commission Act, 15 U.S.C. § 45.  Further, their alleged conduct was unfair in that Defendants' actions, as described herein, significantly threatened and/or harmed competition through infringement, counterfeiting, false advertising, conversion, and circumvention, as well as by inducing authorized resellers to breach their contracts with Cisco, which not only disrupts Cisco's pro-competitive distribution network but also undermines Cisco's ability to fairly compete in the marketplace.

116.    As a direct and proximate result of Defendants' unlawful and unfair business

Case No.

1    practices, Cisco has lost money and property, and has suffered irreparable injury to its brand,

2    business reputation, and goodwill.  As such, Cisco's remedy at law is not adequate to compensate

3    for the injuries inflicted by Defendants.  Accordingly, Cisco is entitled to temporary, preliminary,

4    and permanent injunctive relief against Defendants, in addition to restitution in an amount to be

5    proven at trial.

6                                    **PRAYER FOR RELIEF**

7            WHEREFORE Cisco respectfully prays for the following relief:

8            A.      For entry of judgment in favor of Cisco and against Defendants on each of Cisco's

9    claims for relief alleged in this Complaint;

10           B.      For a preliminary and permanent injunction restraining Defendants; their officers,

11   agents, servants, employees, attorneys, and affiliated companies; assigns and successors in

12   interest; and those persons in active concert or participation with them, from:

13                   (i) importing, exporting, assisting in the importation or exportation, manufacturing,

14   procuring, distributing, shipping, retailing, selling, offering for sale, marketing,

15   advertising, or trafficking in any products not authorized by Cisco and bearing

16   unauthorized simulations, reproductions, counterfeits, copies, or colorable imitations of the

17   CISCO Marks which are likely to cause confusion, or bearing a design that is of a

18   substantially similar appearance to the CISCO Marks listed in this Complaint;

19                   (ii) From passing off, inducing, or enabling others to sell or pass off as authentic

20   products produced by Cisco or otherwise authorized by Cisco, any product not

21   manufactured by Cisco or produced under the control or supervision of Cisco and

22   approved by Cisco, which uses any of the CISCO Marks listed in this Complaint; and

23                   (iii) From committing any act calculated to cause purchasers to believe that

24   products from Defendants are those sold under the control and supervision of Cisco, or are

25   sponsored, approved, or guaranteed by Cisco, or are connected with and produced under

26   the control or supervision of Cisco;

27           C.      For a determination that Defendants' acts of trademark infringement constitute

28   cases of willful and exceptional infringement;

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1     D.     For actual damages as a result of Defendants' unlawful conduct, alleged above, as

2 well as any profits that are attributable to the alleged conduct and are not taken into account in

3 computing Cisco's actual damages;

4     E.     For maximum statutory damages available under the law to the extent Cisco elects

5 statutory damages for any claim for relief;

6     F.     For punitive damages to the fullest extent available under the law;

7     G.     For reasonable attorneys' fees to the fullest extent available under the law;

8     H.     For treble and/or enhanced damages to the fullest extent available under the law;

9     I.     For full restitution, including restoration of all property unlawfully taken from

10 Cisco, as well as any ill-gotten gains from the unauthorized resale of Cisco's property;

11     J.     For prejudgment interest and the costs of prosecuting these claims to the fullest

12 extent available under the law;

13     K.     For any additional injunctive, specific performance, and/or other provisional

14 remedies, as appropriate; and,

15     L.     For such other and further relief as the Court deems just and proper.

16

17 DATED: December 17, 2018           Respectfully submitted,

18                       SIDEMAN & BANCROFT LLP

19

20                       By:       /s/ Richard J. Nelson

21                             Richard J. Nelson

                            Attorneys for Cisco Systems, Inc.

22                             and Cisco Technology, Inc.

23

24

25

26

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF      Case No.

## JURY DEMAND

Pursuant to Civ. L.R. 3-6 and Fed. R. Civ. Proc. 38, Plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc. hereby demand a trial by a jury on all issues herein so triable.


DATED: December 17, 2018                    SIDEMAN & BANCROFT LLP


                                        By:    /s/ Richard J. Nelson
                                            Richard J. Nelson
                                            Attorneys for Cisco Systems, Inc.
                                            and Cisco Technology, Inc.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711