# EXHIBIT A

# Cisco Sys. v. Beccela's Etc., LLC

United States District Court for the Northern District of California, San Jose Division

August 21, 2019, Decided; August 21, 2019, Filed

Case No. 18-cv-00477-BLF

**Reporter**

2019 U.S. Dist. LEXIS 142273 *; 2019 U.S.P.Q.2D (BNA) 312946; 2019 WL 3944986

CISCO SYSTEMS, INC., et al., Plaintiffs, v. BECCELA'S ETC., LLC, et al., Defendants.

**Counsel:** [*1] For Cisco Systems, Inc., a California corporation, Cisco Technology, Inc., a California corporation, Plaintiffs, Counter-defendants: Richard Joseph Nelson, LEAD ATTORNEY, Ellen Peitse Liu, Michael H. Hewitt, Zachary J. Alinder, Sideman & Bancroft LLP, San Francisco, CA; Lyndsey C. Heaton, Sideman Bancroft LLP, San Francisco, CA; Rebecca Keiko Felsenthal, Sideman and Bancroft LLP, San Francisco, CA.

For Beccela's Etc., LLC, a California limited liability company, Defendant: Douglas James Dixon, LEAD ATTORNEY, John Charles Hueston, Hueston Hennigan LLP, Newport Beach, CA; Craig Alexander Fligor, Hueston Hennigan LLP, NEWPORT BEACH, CA.

For Arbitech, LLC, a California limited liability company, Defendant: Douglas James Dixon, John Charles Hueston, LEAD ATTORNEYS, Hueston Hennigan LLP, Newport Beach, CA; Craig Alexander Fligor, Hueston Hennigan LLP, NEWPORT BEACH, CA.

For Beccela's Etc., LLC, a California limited liability company, Counter-claimant: Douglas James Dixon, LEAD ATTORNEY, John Charles Hueston, Hueston Hennigan LLP, Newport Beach, CA.

For Arbitech, LLC, a California limited liability company, Counter-claimant: Douglas James Dixon, LEAD ATTORNEY, Hueston Hennigan LLP, Newport Beach, [*2] CA.

For Arbitech, LLC, a California limited liability company, Counter-claimant: Douglas James Dixon, John Charles Hueston, LEAD ATTORNEYS, Hueston Hennigan LLP, Newport Beach, CA.

**Judges:** BETH LABSON FREEMAN, United States District Judge.

**Opinion by:** BETH LABSON FREEMAN

# Opinion

**ORDER GRANTING WITHOUT LEAVE TO AMEND IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO DISMISS AND/OR STRIKE DEFENDANTS' AMENDED COUNTERCLAIMS AND REQUESTS FOR RELIEF**

[Re: ECF 84]

Before the Court is Plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc.'s (collectively, "Cisco") motion to dismiss Defendants Beccela's Etc., LLC ("BecTech") and Arbitech, LLC's ("Arbitech") (collectively, "Defendants") counterclaims and certain requests for relief. Mot., ECF 84. The Court held a hearing on the motion on July 18, 2019. For the reasons that follow, the motion is GRANTED WITHOUT LEAVE TO AMEND IN PART AND DENIED IN PART.

## I. BACKGROUND[1]

Cisco is a technology company that develops, implements, and sells technologies for networking communications, as well as information technology products and services. First Am. Compl. ("FAC") ¶¶ 17-19, ECF 51. Cisco owns several trademarks and copyrights on their networking hardware and software products and services. [*3] FAC ¶¶ 20-23, 28-30. Cisco also offers various supports for its products, including a warranty program (from 90 days to lifetime) and a "more comprehensive suite of service and support offered to customers for a fee" called SMARTnet Service ("SMARTnet"). FAC ¶ 31. Because of its size, Cisco relies on independent distributors and resellers throughout the world, known to Cisco as "Authorized Channel Partners" or "Authorized Resellers," to distribute and sell its products. FAC ¶ 32. Cisco contracts with Authorized Resellers to allow them to purchase Cisco products at a discount and the Authorized Resellers agree to purchase Cisco products only from Cisco or authorized distributors and to sell those products only to end users (not to other resellers). FAC ¶ 33.

BecTech sells Cisco products but is not a Cisco Authorized Reseller. FAC ¶¶ 35-36. Cisco alleges that BecTech sells the products without, among other things, a manufacturer's warranty or customer support, which would be material to a customer's purchasing decision. FAC ¶ 36. Cisco alleges that in July 2017, BecTech sold 37 Cisco products, advertised as "Brand New Factory Sealed" that were not in fact factory sealed. FAC ¶ 38; see [*4] also FAC ¶¶ 59, 62-63. Cisco alleges that BecTech also resold stolen Cisco products. FAC ¶¶ 64-66. Arbitech also sells Cisco products. FAC ¶ 39. Cisco alleges that Arbitech has a history of selling counterfeit Cisco products. FAC ¶¶ 39-45, 52-66. Cisco also alleges that Arbitech and BecTech sold a SMARTnet contract to an end user without authorization. FAC ¶ 67. Cisco alleges that Defendants must have induced a Cisco Authorized Reseller to sell them the SMARTnet contract in violation of the Reseller's contract with Cisco. FAC ¶ 67.

Based on Defendants' alleged actions, on January 22, 2018, Cisco filed the instant action against Defendants asserting various causes of action for trademark infringement and counterfeiting, unfair competition under California law, and other state law claims. *See generally* Compl., ECF. On August 13, 2018, Cisco amended its complaint to add a copyright infringement claim. *See generally* FAC.

On September 11, 2018, Defendants answered the amended complaint and filed counterclaims. *See generally* ECF 65. On January 2, 2019, Defendants filed an amended answer with counterclaims. *See* Am. Ans., ECF 81. Defendants allege that they sell genuine Cisco products on a lawful [*5] "secondary market" of resellers, Am. Ans. ¶¶ 147, 191-95, and that Cisco unfairly and anticompetitively attempts to control the secondary market by attempting to shut down these lawful sales of its goods, Am. Ans. ¶¶ 145, 162-67. On the secondary market, resellers sell lawfully-obtained Cisco goods for a discounted price, which allegedly benefits consumers. Am. Ans. ¶¶ 157-60, 167. Defendants allege that the resale of the goods is lawful under the "first sale doctrine." Am. Ans. ¶ 168.

Specifically, Cisco allegedly unlawfully interferes with the secondary market in multiple ways as an end run around the first sale doctrine. First, Cisco embeds its hardware with software that it licenses to consumers through its End User License Agreement ("EULA"). Am. Ans. ¶ 170. As a result, when an end user purchases Cisco's hardware, it cannot actually use the hardware without complying with the software EULA, which requires end users to purchase the software from an "Approved Source" (*i.e.*, not on the secondary market). Am. Ans. ¶¶ 170-71. Defendants allege that Cisco "does not require end users to acknowledge, read, or accept a license agreement before using Cisco goods sold by [Defendants]," and [*6] that Cisco does not inform customers of this limitation until "after their purchases." Am. Ans. ¶ 170. Defendants also allege that Cisco misrepresents to consumers that they cannot use the software without a license, even though they have purchased the hardware. Am. Ans. ¶¶ 173-74.

Second, Cisco allegedly impedes the secondary market by offering its SMARTnet services and essential software updates only to end users who have purchased their products from authorized (non-secondary market) sellers. *See* Am. Ans. ¶¶ 176-84. Cisco allegedly often does not inform customers at the time of purchase that they can only

---

[1] The background facts are drawn from the allegations of the complaint and counter-complaint, which are accepted as true for purposes of the motion to dismiss. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

purchase these essential updates through Cisco, and that they will only get such updates through a validly purchased SMARTnet contract. Am. Ans. ¶ 178. Thus, consumers only learn about such limitations after they have substantially invested in Cisco's products. Am. Ans. ¶ 179. Though Defendants lawfully purchase the SMARTnet contract for the product they are reselling, Cisco voids certain SMARTnet contracts "without refunding payments" if it learns the contracts were purchased on the secondary market. Am. Ans. ¶¶ 182, 184

Third, Cisco "selectively classifies genuine, lawfully obtained [*7] Cisco products as 'used,' 'stolen,' 'counterfeit' or 'scrapped,' simply because these products were traded on the secondary market." Am. Ans. ¶ 185. Cisco allegedly misinforms customers who contact it by telling them that products sold on the secondary market are used, which it defines as "previously owned equipment that is now owned by a party other than the original customer," including both "opened and unopened equipment." Am. Ans. ¶ 186. Defendants allege that this definition of the word "used" misleads consumers into thinking that all products sold on the secondary market have previously been opened, even though Defendants and others on the secondary market sell brand new, never-before-opened products. Am. Ans. ¶¶ 187-88. Defendants allege that this misrepresentation deceives consumers and leads them to not purchase products on the secondary market. Am. Ans. ¶¶ 187-88.

Finally, Defendants allege that Cisco wrongfully denies warranty coverage for products sold on the secondary market. *See* Am. Ans. ¶¶ 189-96. Cisco withholds the warranty to prevent the sale of counterfeits; however, Cisco knows that most of the products on the secondary market are genuine. Am. Ans. ¶ 189.

Based on [*8] these alleged actions, Defendants assert four causes of action against Cisco: First, Defendants assert a declaratory judgment claim under 28 U.S.C. §§ 2201-02, asserting that Defendants' "sale of genuine Cisco products which Cisco has unilaterally deemed ineligible for warranty services, do not violate the Lanham Act, 15 U.S.C. §§ 1114, 1125," because sale of a product that lacks a warranty does not alone violate the Lanham Act. Am. Ans. ¶ 198. Second, Defendants assert a declaratory judgment claim under 28 U.S.C. §§ 2201-02, asserting that Cisco's failure to warrant genuine Cisco products sold on the secondary market violates New York General Business Law § 369-b and is unenforceable in New York. Am. Ans. ¶ 205. Third, Defendants assert a claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, based on Cisco's allegedly anticompetitive actions that "are tantamount to violations of the antitrust laws." Am. Ans. ¶ 212. And, fourth, Defendants assert a claim under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), for false advertising based on Cisco's alleged misrepresentations with respect to (1) consumers' need to purchase the EULA software license before they can use legally purchased hardware; and (2) Cisco's use of the term "used" with respect to unopened products sold on the secondary market. Am. Ans. [*9] ¶¶ 218-19. In their request for relief, Defendants seek, among other things, damages and lost profits, as well as attorneys' fees. *See* Am. Ans., Prayer ¶¶ d—e.

On February 13, 2019, Cisco moved to dismiss or strike Defendants' counterclaims. ECF 84. Defendants jointly opposed. Opp., ECF 99. Cisco submitted a brief in reply. Reply, ECF 101. The Court held a hearing on the motion on July 18, 2019. ECF 103.

## II. LEGAL STANDARD

### A. Motion to Dismiss for Failure to State a Claim

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese*, 643 F.3d at 690. However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state [*10] a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

### B. Motion to Dismiss for Lack of a Case or Controversy

As required by Article III, courts may adjudicate only actual cases or controversies. U.S. Const. art. III, § 2, cl. 1. "When presented with a claim for a declaratory judgment, therefore, [*11] federal courts must take care to ensure the presence of an actual case or controversy, such that the judgment does not become an unconstitutional advisory opinion." *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007) (citing *Pub. Serv. Comm'n v. Wycoff, Co.*, 344 U.S. 237, 244, 73 S. Ct. 236, 97 L. Ed. 291 (1952)). "Absent a true case or controversy, a complaint solely for declaratory relief under 28 U.S.C. § 2201 will fail for lack of jurisdiction under Rule 12(b)(1)." *Id.* (citation omitted). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Delphix Corp. v. Embarcadero Techs., Inc.*, 749 F. App'x 502, 504 (9th Cir. 2018).

### C. Motion to Strike

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion made under this rule is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994)) (internal quotation marks omitted). "While a Rule 12(f) motion provides the means to excise improper materials from pleadings, such motions are generally disfavored because the motions may be used as delaying tactics and because [*12] of the strong policy favoring resolution on the merits." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010).

The decision to strike a portion of a party's pleading is within the sound discretion of the court. *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000). If a claim or defense is stricken, leave to amend should be freely given when doing so would not cause prejudice to the opposing party. *Wyshak v. City Nat. Bank*, 607 F.2d 824, 826 (9th Cir. 1979) (per curiam).

### III. DISCUSSION

Cisco moves to dismiss all four of Defendants' counterclaims. It also argues that the Court should strike the request for attorneys' fees in Defendants' prayer for relief. The Court discusses each issue in turn.

Case 3:18-cv-07576-CRB   Document 41-1   Filed 11/07/19   Page 6 of 13

Page 5 of 12
2019 U.S. Dist. LEXIS 142273, *12

### A. Declaratory Judgment Claim: No Lanham Act Violation for Sale of Unwarranted Cisco Products

Cisco argues that the Court should dismiss Defendants' Lanham-Act declaratory judgment claim for two reasons: (1) the claim would not resolve a controversy between the parties; and (2) the *Noerr-Pennington* doctrine bars this claim. As discussed below, the Court disagrees on both fronts.

#### 1. Defendants' Declaratory Judgment Claim Would Resolve a Controversy Between the Parties

In their first claim, Defendants seek a declaratory judgment that their "sale of genuine Cisco products which Cisco has unilaterally deemed ineligible for warranty services[] do[es] not violate the [*13] Lanham Act" because sale of a product that lacks a warranty does not alone violate the Lanham Act. Am. Ans. ¶ 198. Cisco argues that this claim does not identify a controversy between the parties because Cisco does not allege in its complaint that Defendants violate the Lanham Act by selling products that are "genuine" but otherwise lack a warranty. *See* Mot. at 6-7. Instead, Cisco argues, it alleges that Defendants violate the Lanham Act by selling alleged Cisco products that differ in *several* material respect from Cisco products, only one of which is the lack of warranty. *See id.* (citing FAC ¶¶ 39-45, 52-68).

The Court agrees with Defendants that Cisco "put warranty coverage squarely at issue" in its First Amended Complaint, such that a controversy exists. Opp. at 9. Though Cisco's complaint does not explicitly allege that lack of warranty alone renders the products Defendants sell infringing, it does expressly allege that the absence of a warranty is a "material[] differen[ce]" between the products Defendants sell and genuine Cisco products. FAC ¶ 24; *see also* FAC ¶ 36 ("BecTech does not disclose that the Cisco products it sells do not come with a manufacturer warranty. While not disclosed, [*14] knowing the difference between Cisco's warranty and support and the inferior warranty and support provided by the Arbitech Defendants would be highly relevant and material to a consumer's purchasing decision."). Thus, Cisco directly raises the relationship between the presence or absence of a warranty and Defendants' alleged infringement. As Defendants rightly put it, "what fundamentally is at issue here is whether, and in what situations, [Defendants] may legally resell Cisco products." Opp. at 9. Likewise, the Court does not find this claim to be "useless," *see* Reply at 3-4, because it could fully resolve the question of whether Defendants' products, to the extent they are all genuine but lack a warranty, infringe. Because Cisco's complaint "show[s] that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," the Court has jurisdiction to adjudicate the claim. *Delphix*, 749 F. App'x at 504.

#### 2. Defendants' Declaratory Judgment Claim Does Not Violate the *Noerr-Pennington* Doctrine

Cisco also argues that the *Noerr-Pennington* doctrine bars Defendants' declaratory judgment claim because Defendants point only to [*15] Cisco's litigation activity as evidence that there is a case or controversy subject to a declaratory judgment. Mot. at 7-8. Defendants argue that the doctrine does not apply to declaratory judgment claims. Opp. at 10-11.

*Noerr-Pennington* stands for the proposition that "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (citing *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961), and *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965)). This doctrine arose in the context of antitrust law, *see, e.g., Noerr*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464, but the Ninth Circuit has applied its "equally in all contexts," with limited exceptions. *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000)

Protected petitioning activity includes bringing a lawsuit, defending a lawsuit brought by another, and filing papers with a court. *See, e.g., Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) (defining petitioning activity as any "communication to the court" and concluding that *Noerr-Pennington* applies to defensive pleadings

Case 3:18-cv-07576-CRB   Document 41-1   Filed 11/07/19   Page 7 of 13

Page 6 of 12
2019 U.S. Dist. LEXIS 142273, *15

"because asking a court to deny one's opponent's petition is also a form of petition"). "[C]onduct incidental to a petition is protected by *Noerr-Pennington* if the petition itself is protected." *Id.* (internal quotation marks omitted) (quoting *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004)). In the Ninth Circuit, the *Noerr-Pennington* doctrine provides immunity from both federal and state statutory [*16] and common-law liability. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008) (finding immunity from liability under California common law).

The Court agrees with Defendants that *Noerr-Pennington* does not bar their declaratory judgment claim here. Defendants' declaratory judgment claim is not seeking to hold Cisco liable for its protected activity of filing its complaint. Instead, the claim seeks a declaration that *Defendants* are *not* liable for infringement under the Lanham Act. The claim thus is outside the ambit of *Noerr- Pennington*. Put another way, Defendants do not seek remedies (be it damages or otherwise) from Cisco on this claim. Moreover, Cisco has already filed its complaint, such that Defendants' declaratory judgment claim does not burden Cisco's petitioning rights—Cisco has already exercised those rights by filing this suit.

Thus, this Court reaches the same conclusion as the court in *Shell Gulf of Mexico, Inc v. Ctr. for Biological Diversity, Inc.*, No. 3:12-CV-0048-RRB, 2012 U.S. Dist. LEXIS 192096, 2012 WL 12865419, at *9—*10 (D. Alaska June 26, 2012), which held that *Noerr-Pennington* "immunizes a party from liability and not from an entire claim." The facts of *Westlands Water District Distribution District v. Natural Resources Defense Council, Inc.*, 276 F. Supp. 2d 1046, 1054 (E.D. Cal. 2003), render that decision of little persuasive value because the petitioning activity in that case (which was not in court) was still ongoing at the time [*17] the declaratory judgment claim was filed, such that the lawsuit might dissuade the ongoing activity. Further, the Court agrees with Defendants that, unlike *Westlands Water*, Cisco's litigation-related conduct does not form the factual basis for the asserted claim. To the extent these factual distinctions are not controlling, the Court finds the *Shell Gulf* decision more persuasive.

If the *Noerr-Pennington* doctrine barred a declaratory judgment claim in this case, where the petitioning activity is a filed complaint and the claim seeks to adjudicate a controversy put at issue in the complaint, then a startling proportion of declaratory judgment claims under the Declaratory Judgment Act would seemingly be barred. There is an apparent tension between the "actual case or controversy" requirement and the *Noerr-Pennington* doctrine. Oftentimes, the case or controversy is first crystallized through a pre-suit demand letter, which *Noerr-Pennington* ostensibly protects. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006)). Given the prevalence of this factual scenario in litigation, Cisco's failure to cite more than a single case in support of its position quiets any concern this Court might have that *Noerr-Pennington* may bar the claim here.

As [*18] such, the Court holds that the *Noerr-Pennington* doctrine does not bar Defendants' declaratory judgment claim. Cisco's motion is DENIED as to Defendants' first claim.

**B. Declaratory Judgment Claim: Violation of N.Y. Gen. Bus. Law § 369-b**

Defendants seek declaratory judgment that Cisco violates N.Y. Gen. Bus. Law § 369-b by limiting its warranty to products sold by Authorized Sellers. *See* Am. Ans ¶ 205. Cisco argues that the Court should dismiss Defendants' New-York-law declaratory judgment claim for two reasons: (1) there is no private right of action under N.Y. Gen. Bus. Law § 369-b; and (2) Defendants do not state a claim under that statute. Because the Court agrees that Section 369-b does not have a private right of action, it does not address Cisco's second argument.

Section 369-b states that "A warranty or guarantee of merchandise may not be limited by a manufacturer doing business in this state solely for the reason that such merchandise is sold by a particular dealer or dealers . . . . Any attempt to limit the manufacturer's warranty or guarantee for the aforesaid reason is void." N.Y. Gen. Bus. Law § 369-b. Section 369-b does not expressly provide a private right of action. "Absent an express private right of action, New York courts will only conclude that 'a private right of action may fairly be implied' where: (1) the [*19] plaintiff is one of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose; and (3) creation of such a right would be consistent with the legislative scheme." *Wright v. Publishers Clearing House, Inc.*, 372 F. Supp. 3d 61, 65 (E.D.N.Y. 2019)

The Court agrees with the reasoned decision in *Worldhomecenter.com, Inc. v. KWC America, Inc.*, No. 10 CIV. 7781 NRB, 2011 U.S. Dist. LEXIS 104496, 2011 WL 4352390, at *8 (S.D.N.Y. Sept. 15, 2011) that there is no private right of action under Section 369-b. In that case, the plaintiff sought declaratory judgment that the defendant's practices violated Section 369-b, among other statutes. The district court held that Section 369-b does not allow for a private right of action. The court concluded that "the legislative scheme embodied in Article 24-A of the General Business Law, where § 369-a and § 369-b are found, only envisions enforcement by the New York Attorney General, and does not refer to enforcement by private citizens." 2011 U.S. Dist. LEXIS 104496, [WL] at *8 (citing N.Y. Gen. Bus. Law § 369-e, § 369-ee, § 369-eee). It then noted that because "[t]he Attorney General is also empowered to take action under N.Y. Executive Law § 63(12) against any person who demonstrates 'persistent fraud or illegality in the carrying on, conducting or transaction of business,'" it would be "inconsistent with the legislature's chosen scheme [*20] of enforcing Article 24-A through action by the Attorney General" to hold that Section 369-b affords a private right of action. 2011 U.S. Dist. LEXIS 104496, [WL] at *8—*9; *cf. Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 349 n.11 (S.D.N.Y. 2014), *aff'd sub nom. Whitehaven S.F., LLC v. Spangler*, 633 F. App'x 544 (2d Cir. 2015) ("[T]he Legislature specifically amended the law in 1980 to create a private right of action under GBL § 349, but declined to do so in other areas, including the Executive Law." (citing *KWC Am.*)). Though the language of Section 369-b differs from Sections 369-a and 369-e, the Court agrees that the legislative scheme demonstrates that the New York legislature intended that the Attorney General would enforce this law, such that there is no private right of action under the statute.

Defendants cannot bring a declaratory judgment claim based on a statute for which there is no private right of action. *See N. Cty. Commc'ns Corp. v. Cal. Catalog & Tech.*, 594 F.3d 1149, 1162 (9th Cir. 2010). As such, further amendment would be futile, and Defendants' claim is DISMISSED WITHOUT LEAVE TO AMEND.

### C. Lanham Act False Advertising Claim

Cisco argues that the Court should dismiss Defendants' Lanham Act claim because 11 Defendants do not state a claim for false advertising under the Act.

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), "forbids the use of false designations of origin and false descriptions or representations in the advertising and sale of goods and services." *Smith v. Montoro*, 648 F.2d 602, 603 (9th Cir. 1981). A false advertising claim under section 43(a) requires [*21] Defendants to plead five elements:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). "[A] false advertising cause of action under the [Lanham] Act is not limited to literal falsehoods; it extends to false representations made by implication or innuendo." *Cook, Perkiss & Liehe, Inc. v. No. Calif. Collection Serv., Inc.*, 911 F.2d 242, 245 (9th Cir.1990). While the Ninth Circuit has yet to decide whether Rule 9(b) applies to Lanham Act claims, several district courts in the Ninth Circuit have applied Rule 9(b) to false advertising claims brought under the Lanham Act because such claims are grounded in fraud. *See Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1094 (S.D. Cal. 2017).

Cisco argues that Defendants fail to allege (1) any false or misleading statements; (2) deception or materiality; or (3) proximate cause. *See* Mot. at 17-21. The Court discusses each element in turn.

### 1. False or Misleading Statements

Cisco first argues that it has not made [*22] any false or misleading statements with respect to Defendants' or its own goods and services. Defendants assert that Cisco has made two such misrepresentations: (1) it "misclassifies secondary market goods" by defining them as "used" even though they are unopened, Opp. at 20-21; and (2) it misrepresents that its licensing agreement (the EULA) is legally binding, though it is not binding, *id.* at 21. The Court addresses each alleged misrepresentation.

### a. "Used"

Defendants allege that Cisco misclassifies Defendants' products by describing them as "used," even though they have never been opened. Am. Ans. ¶¶ 185-88. Cisco defines the term as "previously owned equipment that is now owned by a party other than the original customer," including both "opened and unopened equipment." Am. Ans. ¶ 186. Defendants allege that this definition of "used" is "contrary to common consumer understanding, and that consumers are misled by [Cisco's] use of the term." Am. Ans. ¶ 188; *see also* Am. Ans. ¶¶ 219-20. Cisco argues that its definition of "used" is not literally false or misleading because, in context, it is susceptible to more than one reasonable interpretation. *See* Mot. at 19.

The Court agrees with Defendants that the question [*23] of whether Cisco's use of the term used is literally false or would mislead a reasonable consumer is a question of fact not suitable for resolution on a motion to dismiss. *See Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, No. C 12-03762 SI, 2014 U.S. Dist. LEXIS 17376, 2014 WL 572290, at *5 (N.D. Cal. Feb. 11, 2014) ("Literal falsity is a question of fact."). The "full context" of the misrepresentations cannot be assessed without additional facts that will come to light during discovery. It is certainly not unreasonable as a matter of law that a consumer would believe the term "used" does not mean "preowned" and does not apply to unopened goods. As such, Defendants have sufficiently alleged that Cisco's use of the term used is a misrepresentation under the Lanham Act.

### b. Binding Effect of the EULA

Defendants allege that Cisco misrepresents the binding effect of its EULA by telling consumers that the EULA is binding when it is not. Specifically, Cisco tells consumers of secondary-market goods that that the "embedded Cisco software that runs on the hardware" is nontransferable, and that the consumers "must acquire a new license from Cisco before the software can be used." Opp. at 22 (citing Am. Ans. ¶ 171). Defendants claim this representation is false advertising because the EULA [*24] is unenforceable under the first sale doctrine, which dictates that trademark rights are extinguished upon the first sale of a good. *See* Am. Ans. ¶ 173. Cisco argues that the first sale doctrine does not apply to software licenses, even when the software is embedded in hardware. While the Court agrees with Cisco that the first sale doctrine does not apply to software licensees even when the software is embedded in lawfully purchased hardware, the Court finds that there are questions of fact regarding whether consumers of Cisco's goods sufficiently agreed to the software license, such that it would bind them.

As Defendants recognize, Opp. at 17-18, the Ninth Circuit has held that the first sale doctrine does not apply to software licensees who never owned the software. In *Vernor v. Autodesk, Inc.*, the Ninth Circuit held that the first sale doctrine did not bar defendant Autodesk from restricting reselling of its software because reseller was merely a licensee of the software and not an owner. *See* 621 F.3d 1102, 1104-05 (9th Cir. 2010). The question at issue in *Vernor* was whether the reseller owned or merely licensed the software. *See id.* at 1107. The Ninth Circuit first surveyed its own case law deciding whether certain consumers were licensees [*25] or owners of the copyrighted property. *Id.* at 1108-09. Based on these precedents, the court established the following rule: "a software user is a licensee rather than an owner of a copy where the copyright owner (1) specifies that the user is granted a license; (2) significantly restricts the user's ability to transfer the software; and (3) imposes notable use restrictions." *Id.* at 1111. It then applied this test to the facts of the case and found that Autodesk's license agreement rendered the consumer a licensee and not an owner. Because the consumer was a mere licensee, the first-sale doctrine did not apply. *See also Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1159 (9th Cir. 2011) (holding that first sale doctrine did not apply because purchasers were licensees, not owners). Thus, under Ninth Circuit precedent, if Cisco can show that Defendants were mere licensees and not owners of the resold products, then the first sale doctrine does not

apply. *See also Int'l Equip. Trading, Ltd. v. AB SCIEX LLC*, No. 13 C 1129, 2013 U.S. Dist. LEXIS 123109, 2013 WL 4599903, at *7 (N.D. Ill. Aug. 29, 2013) ("Since the allegations in the Complaint establish that AB Sciex licensed its software to purchasers, the first sale doctrine is inapplicable.").

The Court declines to distinguish these cases, which involved standalone software, from cases involving software embedded in hardware, as is the case here. The Ninth Circuit [*26] in these cases did not distinguish the first sale doctrine's application between software and hardware; it distinguished it only between licensees and owners. Indeed, both opinions were careful to make clear that copyright owners have long restricted the use of their goods subject to conditions in licenses. *See, e.g., Psystar*, 658 F.3d at 1159 ("[C]ourts have long held that copyright holders may also use their limited monopoly to leverage the right to use their work on the acceptance of specific conditions."); *Vernor*, 621 F.3d at 1108 (discussing as controlling Ninth Circuit precedent in which copyright owners had transferred copies of their motion pictures pursuant to certain conditions in distribution agreements (citing *United States v. Wise*, 550 F.2d 1180 (9th Cir.1977))). The Court has not located (and Defendants do not cite, *see* Opp. at 17-18) any case law that would suggest that application of this well-established law to software embedded in hardware would run afoul of the first sale doctrine. Indeed, if the Court were to apply the first sale doctrine to embedded software as a matter of law, such a holding would render the above case law a nullity in a huge swath of software licensing cases. Defendants have pointed to no authority for extending the scope of the first sale doctrine so broadly. [*27]

Defendants argue that this holding will lead to a parade of anticompetitive horribles, given that software embedded in hardware is so pervasive in the modern world. *See* Opp. at 18-19. But there are significant limitations on the general rule that software licenses are not subject to the first sale doctrine. First, as *Vernor* and *Psystar* make clear, if the consumer is an owner, and not simply a licensee, the first sale doctrine will apply. These cases set forth a multi-factor test for determining whether the consumer is an owner or a licensee, indicating that software "licenses" may still lead to ownership if they have the right characteristics. *See Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1078 (9th Cir. 2015).

Second, the Court agrees with Defendants that the consumer must agree to the software license in order to be bound by it. *See Vernor*, 621 F.3d at 1104 (finding software license where consumers were required to accept the agreement before installing the software and could return the software for a full refund if they did not accept). This follows directly from contract law, in which parties must mutually assent to any agreement. *See Norcia v. Samsung Telecomms. Am.*, LLC, 845 F.3d 1279, 1284 (9th Cir.) (describing California contract requirements). Though an offeree's silence may demonstrate assent to the contract in certain scenarios, an offeree's [*28] silence does not constitute acceptance "when the offeree reasonably did not know that an offer had been made." *Id.* at 1285; *see also Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014). In this case, the question of whether consumers reasonably knew of the EULA such that they could accept it (or return the product if they did not accept) is a question of fact not appropriate for disposition on a motion to dismiss. Defendants allege that Cisco does not inform consumers until "after their purchases" that they will have to license the embedded software and that Cisco "does not require end users to acknowledge, read, or accept a license agreement before using the Cisco goods sold by [Defendants]." Am. Ans. ¶ 170; *contra Blizzard Entm't Inc. v. Ceiling Fan Software LLC*, 941 F. Supp. 2d 1227, 1237 (C.D. Cal. 2013) (holding no anticompetitive acts where "purchasers agreed to [the EULA] upfront"). These allegations call into question whether the consumers of Cisco's products accepted the EULA such that the first sale doctrine might apply.

In sum, the Court holds that the first sale doctrine would not apply to a consumer who is only a licensee of the embedded software, but it can apply where the consumer is found to have not accepted the license. Thus, Defendants have alleged sufficient facts to support the claim. If the EULA cannot bind the consumers, [*29] Cisco's representations about the EULA's binding effect may be misrepresentations under the Lanham Act.

### 2. Deception and Materiality

Cisco argues that even if Defendants have alleged false and misleading statements, they have not alleged that any misrepresentation "actually deceives or has the tendency to deceive a substantial segment of its audience, [or] that

it's likely to influence purchasing decisions"—that is, that the statements are deceptive or material to consumers. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 828 (9th Cir. 2011).

The Court agrees with Defendants that they have sufficiently alleged that the representations above are deceptive and material to consumer-purchasing decisions. Defendants allege that these misrepresentations "successfully deter consumers from purchasing Cisco goods on the secondary market"; that Defendants have "on information and belief . . . lost sales of products that would have been made but for Cisco's false representations to consumers," Am. Ans. ¶ 174; and that but for these representations "consumers would . . . purchase products on the secondary market," Am. Ans. ¶¶ 188, 220. They also allege that Cisco discourages consumers from purchasing goods on the secondary market, including by telling consumers [*30] that "unopened" does not necessarily mean new. Am. Ans. ¶ 186, *see also* Am. Ans. ¶ 166. These allegations are sufficient to allege that the alleged misrepresentations are deceptive and material to consumers' purchasing decisions.

### 3. Proximate Cause

Finally, Cisco argues that Defendants have not alleged that Cisco's alleged misrepresentations proximately caused Defendants harm. "[A] plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014).

The Court agrees with Defendants that they have alleged that the alleged misrepresentations harmed them. Defendants have alleged that on information and belief, they have lost sales of products as a result of Cisco's representations to consumers and that Cisco discouraged consumers from purchasing goods on the secondary market based on these alleged misrepresentations. *See* Am. Ans. ¶¶ 171-75, 188. They also allege that Cisco makes additional profits by "extort[ing]" consumers into purchasing goods from authorized sources, from which the Court can infer that [*31] consumers are purchasing from Cisco in lieu of purchasing from Defendants. Am. Ans. ¶¶ 175, 188.

These allegations are sufficient to allege proximate cause.

* * *

For the foregoing reasons, the Court holds that Defendants have stated a valid claim under the Lanham Act for false advertising. Because the Lanham Act claim remains, the Court denies Cisco's request to strike Defendants' request for lost profits and damages. *See* Mot. at 21-22. Defendants' motion to dismiss the Lanham Act claim is DENIED.

### D. UCL Claim

Cisco argues that the Court should dismiss Defendants' UCL claim because Defendants do not state a claim under the UCL's unlawful, unfair, or fraudulent prongs.

The Court has already concluded that Defendants state a valid claim under the Lanham Act for Cisco's alleged misrepresentations. This alleged violation satisfies both the UCL's unlawful and fraudulent prongs.

To allege a violation of the unfair prong, Defendants must plead "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." [*32] *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999). The Court holds that Defendants state a claim under the UCL's unfair prong by alleging that Cisco attempts to enforce its EULA against consumers, even though the EULA might not bind the consumers because consumers may not have the opportunity to assent to it. Defendants allege that Cisco extorts consumers into purchasing Cisco products by

falsely claiming that the consumers cannot lawfully use purchased products unless they pay for the software license. Am Ans. ¶ 175. In so doing, Cisco allegedly unfairly stifles competition by forcing consumers to purchase products from it and not from resellers on the secondary market. *See, e.g.*, Am. Ans. ¶¶ 162, 168, 186, 212. As alleged, these actions could constitute a violation of the UCL, but additional facts and context are necessary to so decide.

Based on at least these theories, Cisco's motion is DENIED as to Defendants' UCL claim.[2]

**E. Request for Attorney's Fees**

Defendants' seek an award of attorney's fees under California Code of Civil Procedure § 1021.5. To determine whether attorney's fees are warranted under Section 1021.5, the court must evaluate whether Defendants' action "(1) served to vindicate an important public right; (2) conferred a significant benefit [*33] on the general public or a large class of persons; and (3) imposed a financial burden on [Defendants] which was out of proportion to their individual stake in the matter." *Baggett v. Gates*, 32 Cal. 3d 128, 142, 185 Cal. Rptr. 232, 649 P.2d 874 (1982). Cisco seeks to strike this request from the prayer for relief. Mot. at 22-23.

Given that this test requires a fact-intensive inquiry, the Court finds this issue not suitable for resolution on a motion to dismiss. The Court cannot say as a matter of law that Defendants' counterclaims do not serve to vindicate an important public right or confer a benefit on the public, or that Defendants will not bear a financial burden out of proportion with their individual stakes. As Defendants note, they bring several consumer-protection claims and assert several theories of liability that might benefit a large group of individuals—namely, Cisco customers and secondary market resellers. Opp. at 24 — 25; *cf. Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1179, 121 Cal. Rptr. 2d 79 (2002) ("If a plaintiff prevails in an unfair competition law claim, it may seek attorney fees as a private attorney general pursuant to Code of Civil Procedure section 1021.5."). Thus, the requested relief is premised on a viable claim. As such, this issue is more appropriately adjudicated at a later stage of the proceedings on a more established record.

Cisco's [*34] motion to strike the requested relief is DENIED.

**IV. ORDER**

For the foregoing reasons, Cisco's motion is DENIED as to all claims except Defendants' second claim for a declaratory judgment of a violation of N.Y. Gen. Bus. Law § 369-b, which is DISMISSED WITHOUT LEAVE TO AMEND. Cisco's Answer is due **on or before 21 days from the date of this Order**.

**IT IS SO ORDERED**.

Dated: August 21, 2019

/s/ Beth Labson Freeman

BETH LABSON FREEMAN

United States District Judge

---

[2] Although the Court has denied Cisco's motion to dismiss the UCL claim under the unlawful prong based on sufficient allegations of Lanham Act violations, the Court GRANTS the motion as to Defendants' § 369-b theory. As discussed above, the New York law applies only to sales in New York and the UCL applies only to conduct in California. *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1209, 127 Cal. Rptr. 3d 185, 254 P.3d 237 (2011).

**End of Document**