RICHARD J. NELSON (State Bar No. 141658)
E-Mail:      rnelson@sideman.com
LYNDSEY C. HEATON (State Bar No. 262883)
E-Mail:      lheaton@sideman.com
MICHAEL H. HEWITT (State Bar No. 309691)
E-Mail:      mhewitt@sideman.com
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone:    (415) 392-1960
Facsimile:    (415) 392-0827

Attorneys for Cisco Systems, Inc.
and Cisco Technology, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., a California corporation, and CISCO TECHNOLOGY, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>LINK US LLC, a North Carolina corporation, and BASEM TOMA, an individual, ,<br><br>Defendants. | Case No. 3:18-cv-07576-CRB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT BASEM K. TOMA'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES 12(b)(2) AND 12(b)(3)**<br><br>Judge:    Honorable Charles R. Breyer<br><br>Date:     December 6, 2019<br>Time:    10:00 a.m.<br>Crtrm.:   6, 17th Floor |

2835-242\4216146                                                Case No. 3:18-cv-07576CRB
PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FILED BY BASEM TOMA

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF FACTS ................................................................................................... 2

    A. Cisco's Complaint. ................................................................................................... 2

    B. Jurisdictional Allegations re: Toma. ........................................................................ 3

        1. Toma's Control Over Link. ......................................................................... 3

        2. Toma Knew Harm Would Be Felt By Cisco in California ........................... 4

        3. Cisco's Allegations Regarding Link and Toma's Conduct in this District ......................................................................................................... 4

        4. Further Connections Between Toma and the Forum State ........................... 6

    C. Toma's Answer and Participation in this Case ........................................................ 6

III. LEGAL STANDARD .......................................................................................................... 7

IV. ARGUMENT ....................................................................................................................... 8

    A. Toma Has Waived His Objection to Personal Jurisdiction ...................................... 8

    B. The Court Has Personal Jurisdiction Over Toma ..................................................... 9

        1. Cisco Has Sufficiently Alleged that Toma Directed Link's Infringing Activity ........................................................................................ 9

        2. This Court has Specific Jurisdiction Over Toma ....................................... 10

            a. Toma Committed Intentional Acts ................................................ 12

            b. Toma Expressly Aimed His Activities at California ..................... 12

        3. Toma Knew that Harm Would Be Felt in California ................................. 14

    C. Exercise of Jurisdiction Over Toma is Reasonable ............................................... 14

    D. VENUE IN THE NORTHERN DISTRICT OF CALIFORNIA IS PROPER ........ 15

V. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adobe Sys. Inc. v. Blue Source Group, Inc.*,
   125 F.Supp.3d 945, 960 (N.D. Cal. 2015) ...............................................................................11

*Adobe Sys. Inc. v. Childers*,
   No. 5:10-CV-03571 JF/HRL, 2011 WL 566812, at *3 (N.D. Cal. Feb. 14, 2011)....................11

*Adobe Sys. Inc. v. Trinity Software Distribution, Inc.*,
   No. C 12-1614 SI, 2012 WL 3763643 (N.D. Cal. Aug. 29, 2012) ......................................13, 14

*AirWair Internat'l, Ltd. v. Schultz*,
   73 F.Supp. 3d 1225, 1233 (N.D. Cal. 2014) ............................................................................12

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*,
   571 U.S. 49 (2013) ...................................................................................................................15

*Autodesk, Inc. v. RK Mace Engineering, Inc.*,
   No. C–03–5128 VRW, 2004 WL 603382 (N.D. Cal. March 11, 2004) ...................................13

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
   874 F.3d 1064 (9th Cir. 2017)..............................................................................................12, 13

*Ballard v. Savage*,
   65 F.3d 1495 (9th Cir. 1995).......................................................................................................7

*Brayton Purcell LLP v. Recordon & Recordon*,
   606 F.3d 1124, 1128 (9th Cir. 2010).........................................................................................12

*Caruth v. International Psychoanalytical Ass'n*,
   59 F.3d 126 (9th Cir. 1995).........................................................................................................8

*Core-Vent Corp. v. Nobel Industries*,
   11 F.3d 1482 (9th Cir. 1993).....................................................................................................15

*Craigslist, Inc. v. Kerbel*,
   No. 11-CV-3309-EMC, 2012 WL 3166798 (N.D. Cal. Aug. 2, 2012).....................................14

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
   557 F.2d 1280 (9th Cir. 1977)........................................................................................3, 9, 10

*Enertrode, Inc. v. Gen. Capacitor Co. Ltd.*,
   No. 16-CV-02458-HSG, 2016 WL 7475611 (N.D. Cal. Dec. 29, 2016)..................................11

*Facebook, Inc. v. Power Ventures, Inc.*,
   844 F.3d 1058 (9th Cir. 2016).....................................................................................................9

*Fields v. Sedgwick Assoc. Risks, Ltd.*,
    796 F.2d 299 (9th Cir. 1986) .................................................................................................. 7

*Lazar v. Kroncke*,
    862 F.3d 1186 (9th Cir. 2017) ................................................................................................ 8

*Levi Strauss & Co. v. J. Barbour & Sons Ltd., et al.*,
    Case No. 3:18-cv-03540-WHO, 2019 WL 1117533 (N.D. Cal. Mar. 11, 2019) ..................... 11

*MGM v. Grokster, Ltd.*,
    243 F.Supp.2d 1073 (C.D. Cal. 2003) ................................................................................. 13

*NuboNau, Inc. v. NB Labs, Ltd.*,
    2012 WL 843503 (S.D.Cal. Mar.9, 2012) ...................................................................... 13, 14

*Peterson v. Highland Music, Inc.*,
    140 F.3d 1313 (9th Cir. 1998) ................................................................................................ 8

*Plunkett v. Valhalla Investment Services, Inc.*,
    409 F.Supp.2d 39 (D. Mass. 2006) ........................................................................................ 8

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797, 800 (9th Cir.) ............................................................................................ *passim*

*Sher v. Johnson*,
    911 F.2d 1357 (9th Cir. 1990) ................................................................................................ 9

*Stewart v. Screen Gems-EMI Music, Inc.*,
    81 F.Supp.3d 938, 959 (N.D. Cal. 2015) ............................................................................... 3

*Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*,
    704 F.3d 668 (9th Cir. 2012) .......................................................................................... 11, 14

**Statutes**

28 U.S.C. § 1391 (b)(1) and (b)(2) ............................................................................................... 1

28 U.S.C. § 1391 (b)(3) ............................................................................................................ 1, 15

**Other Authorities**

Fed. R. Civ. P. 12(b)(2) ................................................................................................................ 7

Plaintiffs Cisco Systems, Inc. and Cisco Technologies, Inc. (collectively "Cisco" or "Plaintiffs") respectfully submit the following Opposition to Defendant Basem K. Toma's ("Toma") Motion to Dismiss Pursuant to 12(b)(2) and 12(b)(3) ("Motion to Dismiss" or "Motion"), Dkt. No. 40 in the above-captioned Action (the "Action").

## I.     INTRODUCTION

Toma's Motion to Dismiss should be denied because, even at this stage in the litigation, Cisco can establish that Toma's contacts with California, his intentional acts, and his knowledge of Cisco's status as a California corporation are sufficient to confer personal jurisdiction over Toma by this Court.  Toma's contacts with California are substantial and include the fact that: 1) Toma himself has a history of long term business relationships with California customers that (contradictory to the Motion and Toma's Declaration) Toma himself and his former counsel described as "long standing" and covering purchases of "large quantities" of Cisco products; 2) Toma has admitted himself that he owns and controls Co-Defendant Link US LLC ("Link"), and Link has not objected to this Court's personal jurisdiction over it; 3) on behalf of Link, Toma signed a distribution channel partner agreement with Cisco in 2012 which identified Cisco's principal place of business as California such that Toma knew harm to Cisco would be felt in California; 4) Toma's name (*not* Link's) was listed on the return address for the counterfeit test purchase products sold by Link into California; and, 5) Link's use of the platforms of a California company (eBay) in order to sell Cisco products.  In the face of all of the above, it is – at best – disingenuous for Toma to claim that he does not conduct business in California and shouldn't be subject to the jurisdiction of this Court.

Further, Cisco can also show that Toma has waived his personal jurisdiction objection by taking substantive steps in this litigation including by appearing on numerous occasions, responding to discovery, and filing numerous stipulations with the Court, providing another basis for denying Toma's Motion.

Toma also moves to dismiss based on improper venue and, while he addresses the factors under 28 U.S.C. § 1391(b)(1) and (b)(2) in his brief, he misleadingly ignores the fact that § 1391(b)(3) provides that venue is proper in any district in which the Court has personal

jurisdiction over *any* defendant in an action – and that Toma's Co-Defendant, Link, has already submitted to the jurisdiction of this Court. In fact, nowhere in Toma's Motion does he address the fact that Link has not only agreed to the jurisdiction of this Court, but filed a Counterclaim against Cisco. This is a glaring omission as, regardless of the outcome of the instant Motion, it means that Toma will nevertheless be litigating a case in this District in his capacity as owner and Managing Director of Link.

Cisco respectfully requests that the Court deny the Motion to Dismiss in its entirety, or, in the alternative, requests that the Court defer ruling on the Motion to permit jurisdictional discovery or amendment of the Complaint in order to allege additional jurisdictional facts already known.

## II.   STATEMENT OF FACTS

### A.   Cisco's Complaint.

The operative Complaint ("Complaint") alleges that Link and its President/Managing Director, Toma, were directly involved in "a deliberate and unlawful scheme" of importing large quantities of computer networking equipment bearing counterfeit Cisco trademarks, which were then resold or offered for sale to consumers. Complaint, Dkt. No. 1, ¶1. Cisco alleges that Link and Toma have sold and continue to import, sell, offer for sale, distribute, and transport unauthorized reproductions, copies, counterfeits and colorable imitations of products bearing Cisco's trademarks. Complaint, at ¶¶28-29. Cisco alleges that Toma is actively involved in the day-to-day management and operation of Link. Complaint, at ¶30. Cisco also alleges that Toma controls Link, is the alter ego of Link, and knowingly and intentionally used Link to commit the unlawful actions alleged in the Complaint, Complaint at ¶31, which include at least thirteen (13) attempts to import counterfeit Cisco products into the U.S., and the sale of ten (10) counterfeit Cisco products to an investigator located in Northern California, Complaint at ¶¶ 45, 52, 56.

Based on the allegations set forth in detail in the Complaint, Cisco brings claims for relief against the Defendants based on trademark infringement and counterfeiting, copyright infringement, unfair business practices, and a number of additional state and federal causes of action. *See id*., ¶¶ 66-116.

**B.     Jurisdictional Allegations re: Toma.**

      **1.     Toma's Control Over Link.**

At the outset, it is important to note that Link has not contested the jurisdiction of this Court over it as a defendant in this case. Owing – in part – to his control over Link and his direct involvement in activities constituting the sale of counterfeit and otherwise infringing goods, this Court has a basis for jurisdiction over Toma. Cisco has alleged that Toma, as an owner of Link with managing control over the company, directed its employees and contractors in its daily activities relating to Link's sales of counterfeit Cisco products: "TOMA is actively involved in the day-to-day management and operations of LINK . . . .TOMA controls LINK, LINK is the alter ego of TOMA, and TOMA knowingly and intentionally used LINK to commit the unlawful actions alleged herein." Complaint at ¶¶ 30-31. Toma's Declaration comports with these allegations as he admits that he is Managing Director of Link, that the company has only a handful of employees, two "officers," and two "owners/shareholders," and that he manages various sales accounts at Link. *See* Declaration of Basem K. Toma In Support of Motion to Dismiss ("Toma Decl."), Dkt. 40-1, at ¶¶1,5, 6. That Toma claims he does not have "sole" control over the daily operations of Link does not mean he cannot be found liable for Link's tortious activities if he was actively involved with and directed them. *See* Toma Decl. at ¶ 8 and *infra* section IV.B.1.

Communications from 2014 surrounding Link's termination as a Cisco authorized partner (discussed further below) indicate that Toma was included on many e-mail communications, letters, and calls with Cisco regarding its sourcing and sales and that Toma was hands on with respect to communications with Link's vendors and customers. *See* Declaration of Michael H. Hewitt In Support of Cisco's Opposition to Motion to Dismiss ("Hewitt Decl.")[1] at Exs. A, G -J;

---

[1] As Toma has submitted evidence by way of his declaration and bases his motion on facts outside the pleadings, Cisco herein submits additional factual evidence in support of the finding of personal jurisdiction over Toma. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). However, should the Court be inclined to grant Toma's Motion at this stage, Cisco requests – a minimum – jurisdictional discovery in order to further investigate the facts surrounding Toma's links to California and control over Link. *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F.Supp.3d 938, 959 (N.D. Cal. 2015)("the district court has discretion to allow a (footnote continued)

¶¶ 2, 7-11.  These emails contradict Toma's declaration and indicate that, in fact, Toma was involved with Link's day-to-day operations.

### 2. Toma Knew Harm Would Be Felt By Cisco in California

Cisco's Complaint alleges that Toma knowingly infringed the intellectual property owned by Cisco, a company located in the Northern District of California owing, in part, to Link's former status as an authorized Cisco reseller.  *See* Complaint at ¶¶36-40.  Cisco has further uncovered that it was Toma himself who signed the Indirect Channel Partner Agreement ("ICPA") between Link and Cisco in 2012.  *See* Hewitt Decl. at ¶ 3 and Ex. B.  That ICPA clearly identifies Cisco as a California corporation, lays out that the agreement is governed by California law, and provides that any disputes relating to that agreement be mediated and arbitrated in San Francisco, California.  *See* Hewitt Decl. at ¶4 and Ex. C.  Thus, Toma cannot credibly claim that he was not aware that the effects of counterfeit sales of Cisco products would be felt by Cisco in California.

### 3. Cisco's Allegations Regarding Link and Toma's Conduct in this District

Cisco alleges that both Link and Toma have "engaged in business activities in this district, misled customers in this district, directed business activities at this district, and committed tortious acts with knowledge that the efforts of their acts would be felt by Cisco in this district.  Complaint at ¶8.  Cisco has also alleged that although Defendants are each citizens of North Carolina they "do business in the State of California and/or participated or undertook obligation or availed themselves of rights arising out of the subject events and happenings herein."  *Id.* at ¶9.

Cisco further specifically alleges that Link, at Toma's direction, engaged in a host of intentionally infringing activities, directly targeted at Cisco in California and other California residents including that:

- On thirteen separate occasions, Link attempted to import counterfeit Cisco products which were seized by the Customs and Border Patrol from a number of exporters located in Hong Kong and China.  Complaint at ¶¶32-34.

---

plaintiff to conduct jurisdictional discovery," which should be "ordinarily granted 'where pertinent facts bearing on the question of jurisdiction are controverted.'")(internal citations omitted).

- In April 2018, Link sold one counterfeit Cisco switch to a Cisco investigator in California which contained a boot-loader hack intended to circumvent Cisco's copyrighted software. Complaint at ¶¶44-50.

- Also in April 2018, Link sold a doctored software license to a Cisco investigator located in California. Complaint at ¶¶51-54.

- Also in April 2018, Link sold eight counterfeit transceivers to a Cisco investigator located in California. Complaint at ¶¶55-60.

- In August 2018, Link sold one counterfeit Cisco switch and a counterfeit Cisco stack module to a Cisco investigator located in California. Complaint at ¶¶61-64.

Though not alleged in the Complaint, both packages sent by Link to Cisco's investigator in April 2018 and the package sent by Link in August 2018 showed Toma's individual name as the sender, *with no mention of Link whatsoever:*

**From April 2018 Test Purchase:**

 

**From August 2018 Test Purchase:**



*See* Hewitt Decl. at ¶ 5-6 and Exs. D-F.

This connection between Toma himself and the repeated sales of counterfeit goods into California is a significant link between Toma and the forum state. The above return address labels also directly contradict Toma's sworn statements in his declaration that he was not personally involved nor aware of the test purchases made by Cisco's investigators. *Compare* above *with* Toma Decl. at ¶ 7.

### 4. Further Connections Between Toma and the Forum State

In further contrast to the claims made in Toma's Declaration, other documents from 2014 show that Toma has had significant business contact with at least one customer in California for over a decade. In May of 2014, Toma and others at Link were communicating with Cisco regarding breaches of the ICPA and unauthorized sales. *See* Hewitt Decl. at ¶ 7 and Ex. G. As part of the back and forth, Toma told Cisco that a certain customer, O1 Communications "has been a customer of mine for over 10 years," in an effort to assure Cisco about certain questionable sales. *See id.* at ¶8. Further emails between Cisco, Toma, and others at Link sent at this same time clearly establish that this long term customer, O1, is located in El Dorado Hills, CA. *See id.* at ¶9 and Ex. H. In a letter dated July 10, 2014, Toma's counsel also described Toma's connection with O1 stating "O1 has maintained a long standing relationship with Link-US and **Basem Toma**. In fact, O1 had purchased large quantities of Cisco units[.]" *See id.* at ¶ 10 and Ex. I at p.3 (emphasis added). This evidence stands in stark contradiction to Toma's claim – made under penalty of perjury – that, aside from operating a website that can be accessed by Californians "I have never directly advertised in California or solicited customers in California on behalf of Link[.]" Toma Decl. at ¶ 6. It also establishes a clear connection between Toma and repeated sales of Cisco product into California over a period of at least 10 years.

Lastly, as admitted by Toma in his Declaration, Link lists its products for sale on the platform of a California company (eBay), providing yet another example of Toma's connections to California and sales of Cisco products. Toma Decl. at ¶ 6.

### C. Toma's Answer and Participation in this Case

Link and Toma did not file a motion to dismiss in response to the filing of Cisco's Complaint, but rather filed an answer on March 18, 2019. *See* Dkt. No. 23 ("Answer"). In it, neither Toma nor Link included any affirmative defense of lack of personal jurisdiction nor did they specifically deny allegations regarding this Court's jurisdiction. *See id.* A few weeks later, Toma and Link amended their Answer to include an affirmative defense of lack of personal jurisdiction. *See* Dkt. No. 28 ("Amended Answer"). This, despite the fact that Link also

concurrently filed a Counterclaim against Cisco, essentially conceding this Court's jurisdiction over it. *See id.*

Since then, Toma has actively participated in the case. First, Toma submitted a Joint Case Management Conference Statement through his counsel. *See* Joint Case Management Statement, Dkt. No. 24. At the Case Management Conference hearing on March 29, 2019, Toma appeared, through his counsel Justin Owens, on behalf of both Link and Toma. *See* 3/29/19 Minute Entry for Case Management Conference Hearing, Dkt. No. 27 (noting appearance of Justin Owens on behalf of Defendants).

Later, Toma served responses to substantive discovery requests from Cisco on September 6, 2019, including a verification from Toma as an individual. *See* Hewitt Decl. at ¶12 and Ex. K. Nowhere in these discovery responses did Toma explicitly preserve his objection of lack of personal jurisdiction. *Id.*[2] Toma also submitted at least seven stipulations in this matter between the initial filing of the Complaint and this opposition, none of which included a reservation of his personal jurisdiction objection.[3] On March 22, 2019, Defendants also served their Initial Disclosures, without reservation of Toma's personal jurisdiction objection. *See* Hewitt Decl. at ¶ 14 and Ex. L.

### III.   LEGAL STANDARD

When opposing a jurisdictional challenge under Rule 12(b)(2), Cisco "need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); *Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986). "Although [Cisco] cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.) (citations omitted). Importantly, any conflicts in

---

[2] Toma does generally object, however, to the extent that each request improperly seeks documents from Toma as an individual, and that he does not concede that there is any alter ego relationship between Toma and Link. *See* Hewitt Decl. at ¶13 and Ex. K.

[3] See Dkt. Nos. 16 20, 25, 30, 33, 36, and 38.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

the evidence must be resolved in Cisco's favor. *Id.* Where the motion is based on written materials, Cisco is only required to "make a prima facie showing of personal jurisdiction." *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995).

### IV.     ARGUMENT

#### A.     Toma Has Waived His Objection to Personal Jurisdiction

As an initial matter, Toma's Motion should be denied as he has waived his objection to personal jurisdiction by actively participating in this case. While Toma had arguably preserved his personal jurisdiction by filing the Amended Answer, failure to press one's defenses after raising them may result in abandonment. *See Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318, (9th Cir. 1998); *see also Plunkett v. Valhalla Investment Services, Inc.*, 409 F.Supp.2d 39, 41-42 (D. Mass. 2006).  A Court can find waiver of the personal jurisdiction defense if a party acts in a way that is inconsistent with raising or maintaining it.  *Lazar v. Kroncke*, 862 F.3d 1186, 1200–01 (9th Cir. 2017) (citing *Peterson* , 140 F.3d at 1318–19).

In *Plunkett v. Valhalla*, although the court found that language in the defendants' answer may have arguably preserved their personal jurisdiction objection, the defendants did not "formally" press the issue until two months later, after defendants had already: (1) participated in a scheduling conference and engaged in colloquy with the Court with respect to the nature of the case, (2) conducted discovery, (3) consented to Alternative Dispute Resolution, (4) entered into a stipulation and protective order with the plaintiff, and (5) moved the Court to allow its Ohio counsel to appear *pro hac vice*. *Plunkett,* 409 F.Supp.2d at 42.  Based on that conduct, the Court found defendants had permanently abandoned their defense of lack of personal jurisdiction and improper venue. *Id.*, at 42.

Toma's activities here mirror those in *Plunkett*, where Toma has waited nearly eight months after filing of his Amended Answer to bring the instant motion and where, as detailed above, Toma has participated in case management conferences, discovery, and multiple stipulations seeking extensions of deadlines to allow all parties to pursue settlement discussions. *See* section II.C. *supra.* Toma signaled his clear purpose to defend the lawsuit and after nearly a year of litigation, Cisco would be prejudiced and arguably "sandbagged" if it were suddenly

forced to consider filing a nearly identical suit against Toma in North Carolina.  As such, the Court should find that Toma has abandoned his personal jurisdiction objection and deny his Motion on that basis.

### B. The Court Has Personal Jurisdiction Over Toma.

Due process permits the exercise of jurisdiction if a court had either general or specific jurisdiction over a non-resident defendant.  *See Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  "General jurisdiction applies where a defendant's activities in the state are 'substantial' or 'continuous and systematic,' even if the cause of action is unrelated to those activities."  *Id.* (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977)).  A nonresident defendant that is not subject to general jurisdiction may still be sued in the forum if specific jurisdiction exists.  *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977).  Here, the Court has personal jurisdiction over Toma both through his direction of Link's activities underlying the Complaint and through his own purposeful direction of infringing activity to California.

#### 1. Cisco Has Sufficiently Alleged that Toma Directed Link's Infringing Activity

Defendants concede that the Court has jurisdiction over Link.  Indeed, Link has filed its Amended Counterclaims in this jurisdiction, consenting to being subject to personal jurisdiction of the Court.  *See* Dkt. No. 28.  While jurisdiction over a company does not automatically confer jurisdiction over non-resident officers and directors, if Toma is sufficiently alleged to have directed the infringing activity, he is directly liable for his tortious acts, regardless of the fact that they were performed on behalf of the company.  *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016) ("A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf.") (internal citation omitted).

Here, Toma admits that he founded Link in 2011 and that he is the company's Managing Director.  Toma Decl. at ¶6. As described above, Cisco alleges that Toma was involved in the day-to-day management and operations of Link including the infringing activities complained of.

1 Complaint at ¶30. While Toma disputes his involvement in the counterfeit sales to Cisco's
2 investigators and the "fulfilment, shipping, accounting, tracking, e-commerce, or advertising" at
3 Link, these sworn statements are directly contradicted by evidence showing that (1) his individual
4 name is listed as the sender on the counterfeit Cisco products sold by Link in Cisco's test
5 purchases (in fact Link's name doesn't appear at all); and (2) the evidence from 2014 showing
6 Toma's intimate involvement in vendor and customer relations as well as in communications with
7 Cisco. *See* Hewitt Decl. at ¶¶ 2, 5-11 and Exs. A, D-J. As conflicts in the evidence must be found
8 in Cisco's favor, the Court must find that Cisco has made a sufficient showing that Toma directed
9 Link's activity as alleged in the Complaint. *Schwarzenegger*, 374 F.3d at 800.

10 While Toma's Declaration denies facts underlying certain alter ego factors (under
11 capitalization, observing corporate formalities, payment of taxes) proving out each of those
12 elements (and, indeed, proving alter ego liability itself) is not necessary if Cisco sufficiently
13 alleges – as it has – that Toma himself committed tortious acts. Further, Cisco notes that several
14 of the statements in Toma's Declaration have already been contradicted by evidence linking Toma
15 to the test purchases and significant sales to at least one California customer, such that discovery
16 may very well reveal Toma's other statements regarding unity of interest and disregarding the
17 corporate form are similarly unsupportable. At minimum, Cisco has certainly alleged enough and
18 submitted sufficient additional facts in order to justify jurisdictional discovery into Toma's control
19 over Link and direction of Link's sales of counterfeit products.

20 **2.   This Court has Specific Jurisdiction Over Toma**

21 A nonresident defendant that is not subject to general jurisdiction may still be sued in the
22 forum if specific jurisdiction exists. *Data Disc, Inc.*, 557 F.2d at 1287. "The Ninth Circuit
23 employs a three-part test to determine whether there is specific jurisdiction over a defendant:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable."

*Levi Strauss & Co. v. J. Barbour & Sons Ltd., et al.*, Case No. 3:18-cv-03540-WHO, 2019 WL 1117533, *3 (N.D. Cal. Mar. 11, 2019) (citing *Schwarzenegger*, 374 F.3d at 802).

"In trademark infringement actions and copyright infringement actions, the plaintiff must show that defendants purposefully directed their activities at the forum." *Adobe Sys. Inc. v. Blue Source Group, Inc.*, 125 F.Supp.3d 945, 960 (N.D. Cal. 2015). This standard is consistent with the Ninth Circuit's "effects" test. Under that test, Toma "allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Enertrode, Inc. v. Gen. Capacitor Co. Ltd.*, No. 16-CV-02458-HSG, 2016 WL 7475611, at *4 (N.D. Cal. Dec. 29, 2016) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) ) (internal quotation marks and formatting omitted).

Thus, "[i]n cases alleging the violation of intellectual property rights, specific jurisdiction may also exist 'where a plaintiff files suit in its home state against an out-of-state defendant and alleges that defendant intentionally infringed its intellectual property rights knowing [the plaintiff] was located in the forum state.'" *J. Barbour & Sons Ltd.*, 2019 WL 1117533, *3 (quoting *Adobe Sys. Inc.*, 125 F.Supp.3d at 961); *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 675-76 (9th Cir. 2012) (plaintiff who alleged that defendant "willfully infringed copyrights owned by [plaintiff], which, as [defendant] knew, had its principal place of business in the Central District [of California]," established that defendant's intentional act was "expressly aimed at the Central District of California because [defendant] knew the impact of his willful violation would be felt there."); *Adobe Sys. Inc. v. Childers*, No. 5:10-CV-03571 JF/HRL, 2011 WL 566812, at *3 (N.D. Cal. Feb. 14, 2011) ("In intellectual property cases, the Ninth Circuit has found specific jurisdiction where a plaintiff bringing suit in its home forum against an out-of-state defendant alleges that the defendant engaged in infringing activities knowing that plaintiff was located in the forum.").

Here, this test is met as Cisco has filed suit in its home state of California and as Toma, as

1 the Managing Director of Link and the signatory on the prior ICPA agreement with Cisco,

2 engaged in infringing sales of counterfeit products with the knowledge (either actual or imputed)

3 that Cisco is located in California.

### a. Toma Committed Intentional Acts

In the Ninth Circuit, the "threshold of what constitutes an intentional act is relatively low." *AirWair Internat'l, Ltd. v. Schultz*, 73 F.Supp. 3d 1225, 1233 (N.D. Cal. 2014). Courts have found that even sending an email is an intentional act. *See Axiom Foods, Inc. v. Acerchem International, Inc.,* 874 F.3d 1064, 1069 (9th Cir. 2017(sending an email newsletter constituted an intentional act). Cisco must first demonstrate that Toma committed intentional acts, which, under the *Calder* effects test, is defined as an "external manifestation of the actor's intent to perform an actual, physical act in the real world." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) *abrogation on other grounds recognized by Axiom Foods, Inc. v. Acerchem Int'l, Inc.,* 874 F.3d 1064, 1069 (9th Cir. 2017). In *Brayton*, the Court recognized that intent refers "to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Brayton Purcell*, 606 F.3d at 1128.

Although Toma denies being personally involved in some activities, Toma admits that he is the Managing Director of Link, founded the company in 2011, and predominantly manages various sales accounts. Toma Decl. at ¶6. Tellingly, Toma does not deny his involvement in the purchases of counterfeit Cisco product seized by Customs Border Patrol. *See generally* Toma Decl. Further, while Toma did deny having any involvement with the test purchases described in the Complaint, such denial is flatly contradicted by the return address information included on *both* packages Link send to Cisco's investigator. *See* Hewitt Decl. at ¶¶ 5-6 and Exs. D-F. Lastly, contemporaneous emails from 2014 show that it was Toma's practice to be closely involved with Link's suppliers (such as ScanSource) and customers (such as O1), which further supports Cisco's allegations that Toma actively participated in Link's sales of counterfeit Cisco products. *See* Hewitt Decl. at ¶¶2, 7-11 and Exs. A, G-J.

### b. Toma Expressly Aimed His Activities at California

To analyze the "express aiming" prong in the context of intellectual property

1 infringement, the Ninth Circuit has held that "alleged willful infringement of [a plaintiff's
2 intellectual property], and its knowledge of both the existence of the [intellectual property] and the
3 forum of the [intellectual property] holder" is enough to show "individualized targeting" of the
4 forum state to meet this requirement. *Axiom Foods, Inc. v. Acerchem International, Inc*., 874 F.3d
5 1064, 1069 (9th Cir. 2017) (internal citations omitted).  That standard is met easily here.

6       There can be no question that Toma, as a formerly authorized partner of Cisco, knew that
7 Cisco was located in California, and headquartered in this forum.  Complaint, at ¶27; *see also*
8 Hewitt Decl. at ¶¶3-4 and Exs. B-C.  On that basis alone, Toma can be charged with the
9 knowledge that any activities causing harm to Cisco would be felt in Northern California.  *See,*
10 *e.g., Autodesk, Inc. v. RK Mace Engineering, Inc*., No. C–03–5128 VRW, 2004 WL 603382, at *6
11 (N.D. Cal. March 11, 2004) ("Although plaintiff bought its software in Missouri, the software was
12 accompanied by several documents that show that plaintiff's primary place of business is located
13 in San Rafael, California. Based on these notices, defendant should have known that plaintiff is
14 headquartered in northern California.") (internal quotations omitted); *MGM v. Grokster, Ltd*., 243
15 F.Supp.2d 1073, 1089 (C.D. Cal. 2003) (applying constructive knowledge where defendant
16 "reasonably should be aware that many, if not most, music and video copyrights are owned by
17 California-based companies").

18       Cisco has also included herewith evidence showing that Toma's name was listed as the
19 sender of counterfeit Cisco products into California.  *See* Hewitt Decl. at ¶¶ 5-6 and Exs. D-F.
20 While Toma has disputed having been involved with such counterfeit sales,  Cisco's documentary
21 support  creates a question of fact as to that must be resolved in Cisco's favor.  *See*
22 *Schwarzenegger*, 374 F.3d at 800.

23       Both the *Trinity* and *NuboNau, Inc*. cases which Toma cites are inapposite.  *Adobe Sys.*
24 *Inc. v. Trinity Software Distribution, Inc.,* No. C 12-1614 SI, 2012 WL 3763643, at *6 (N.D. Cal.
25 Aug. 29, 2012);  *NuboNau, Inc. v. NB Labs, Ltd*., 2012 WL 843503, *3 (S.D.Cal. Mar.9, 2012).  In
26 *Trinity*, for example, the test purchase in question involved only a single piece of software and the
27 defendants swore that it could identify no other sales of software into California.  *Trinity Software*
28 *Distribution, supra,* 2012 WL 3763643, at *6.    In contrast, Cisco has identified two different test

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  purchases into California, of a total of 12 different products, all of which were counterfeit.
2  Complaint at ¶¶ 44-65.   Importantly here, Toma has not alleged a lack of sales by Link or himself
3  into California, merely a lack of "direct advertising" into the state.  *See* Toma Decl. at ¶ 5.  What's
4  not revealed in his declaration is the volume of sales of Cisco products into California and, based
5  on the sparse documentation Cisco is aware of thus far, there appears to be significant sales into
6  the state related to at least one long term client of Toma's: O1.  *See* Hewitt Decl. at ¶¶7-10 and
7  Exs. G-I.  In addition, unlike the Plaintiffs in either *Trinity* or *NuboNau, Inc.*, Cisco has alleged
8  that Defendants have sold and, upon information or belief continue to sell, numerous counterfeit
9  Cisco products beyond the twelve products they have already obtained throughout the United
10 States, including into California.  Complaint at ¶29.
11      Lastly, Toma's and Link's use of eBay, a California company, to sell Cisco products also
12 weighs in favor of finding personal jurisdiction here.  *Craigslist, Inc. v. Kerbel*, No. 11-CV-3309-
13 EMC, 2012 WL 3166798, at *5 (N.D. Cal. Aug. 2, 2012) ("Defendant's use of third-party California
14 companies to process payments ... lends further support to the claim that it has purposefully availed
15 itself of the forum.").

16      **3.      Toma Knew that Harm Would Be Felt in California**

17      Where a party brings a claim for infringement of intellectual property, "it is foreseeable
18 that the loss will be inflicted ... where the copyright holder has its principal place of business."
19 *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d  668, 679 (9th Cir. 2012).  As discussed
20 above, Toma had numerous reasons to know that the effects of his and Link's intentional acts
21 would be felt by Cisco in this forum as Cisco is a Northern California resident.  Toma's
22 intentional acts of selling counterfeit Cisco products and infringing Cisco's intellectual property
23 rights, coupled with his knowledge that Cisco is a California company, satisfy all three prongs of
24 the *Calder* test, and are more than enough to establish personal jurisdiction here.

25      **C.      Exercise of Jurisdiction Over Toma is Reasonable**

26      Next, Toma argues that it would be "unreasonable" to hale him into California court.  *See*
27 Motion to Dismiss, pp. 11-12.  But there is no legitimate factual or legal support for that claim.
28 To determine the reasonableness of exercising personal jurisdiction here, the Ninth Circuit

requires the consideration of seven factors. *See Core-Vent Corp. v. Nobel Industries*, 11 F.3d 1482, 1487-88 (9th Cir. 1993). Toma appears to only rely on one factor: the burden on Toma as an individual. However this argument ignores the fact that Toma will already be defending a case in this Court on behalf of Link and, further, even seeks to prosecute Link's Counterclaim against Cisco in this very Court. Judicial resources are not served by requiring both Cisco and Toma to litigate the case against Link in this Court and a second case relating to entirely overlapping facts in a court in North Carolina. Toma also ignores the fact that the Ninth Circuit has held that, "[m]odern advances in communications and transportation have significantly reduced the burden of litigating in another country," let alone litigating in a court that is within the country but across the U.S. *See Core-Vent*, 11 F.3d at 1489, *citing, Sinatra v. National Enquirer,* 854 F.2d 1191, 1199 (9th Cir. 1988). Toma simply cannot meet his burden of showing that exercise of personal jurisdiction here is unreasonable.

### D.   VENUE IN THE NORTHERN DISTRICT OF CALIFORNIA IS PROPER

In his argument regarding venue, Toma conveniently ignores 28 U.S.C. § 1391 (b)(3) which states: "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391 (b)(3). Since Link has already submitted to personal jurisdiction of this District and, as described above, this Court has personal jurisdiction over Toma, venue is proper in this district. *See Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 56–57 (2013) ("The statute thereby ensures that so long as a federal court has personal jurisdiction over the defendant, venue will always lie somewhere.").

### V.   CONCLUSION

For the foregoing reasons, Cisco respectfully requests that the Court deny the Motion to Dismiss for Lack of Jurisdiction and Improper Venue filed by Toma in its entirety. In the alternative, Cisco requests that the Court defer ruling on this Motion and permit Cisco to take jurisdictional discovery into Toma's forum-related activities and control over Link, or permit Cisco to amend its Complaint to allege additional facts regarding jurisdiction over Toma.

1

2  DATED: November 15, 2019                Respectfully submitted,

3                                          SIDEMAN & BANCROFT LLP

4                                          By:  */s/ Michael H. Hewitt*
5                                               Michael H. Hewitt
                                                Attorneys for Plaintiffs
6                                               Cisco Systems, Inc. and Cisco Technology, Inc.